2011 Ark. 462

James E. MONTGOMERY, Appellant,

v.

STATE of Arkansas, Appellee.

No. CR 11–141.

Supreme Court of Arkansas.

Nov. 3, 2011.

Jeffrey Marx Rosenzweig, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Eileen W. Harrison, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice.

Appellant James E. Montgomery appeals the order of the Greene County Circuit Court denying his petition for postconviction relief filed pursuant to Ark. R.Crim. P. 37.1 (2011). On appeal, Montgomery argues that it was error for the circuit court to deny his request for postconviction relief, and to do so without holding a hearing. We affirm in part and reverse and remand in part.

Appellant was convicted of rape of his adopted granddaughter, K.M., who was then six years old. He was sentenced to twenty-five years' imprisonment in the Arkansas Department of Correction, and the court of appeals affirmed his conviction and sentence. *Montgomery v. State,* 2010 Ark. App. 501, 2010 WL 2404182.

Thereafter, Appellant filed a timely Rule 37 petition, raising six allegations of ineffective assistance of counsel.[1] The circuit court denied the petition without a hearing. Appellant lodged the instant appeal, arguing five instances of error by the circuit court in denying the petition. Specifically, Appellant argues that the circuit court erred in denying his petition, without a hearing, where his trial counsel was ineffective in failing to (1) object to testimony about the victim's credibility; (2) object to testimony about patterns of behavior in child-sexual-abuse cases; (3) object to testimony that resulted in violations of his rights under the Fifth and Fourteenth Amendments to the United States Constitution; (4) request DNA testing on a condom found in the victim's bed; and (5) call Chris Montgomery, K.M.'s father and Appellant's son, as a witness at trial.

Before turning to the merits of Appellant's arguments, we note that where no hearing is held on a Rule 37 petition, the trial court has an obligation to provide written findings that conclusively show that the petitioner is entitled to no relief. *Camacho v. State,* 2011 Ark. 235, 2011 WL 2062328 (per curiam); *see also* Ark. R.Crim. P. 37.3. This court may affirm the denial of a Rule 37.1 petition, regardless of the adequacy of the order, if we can determine from the record that the petition was wholly without merit or where the allegations in the petition are such that it is conclusive on the face of the petition that no relief is warranted. *Gonder v. State,* 2011 Ark. 248, 382 S.W.3d 674 (per curiam). In this case, the circuit court complied with the requirement of making written findings; however, we cannot say that Appellant is not entitled to relief on some of his claims based on the face of the petition or the record before us.

### I. *Counsel's Failure to Object to Testimony Regarding Credibility*

As his first point on appeal, Appellant asserts that the circuit court erred in not granting his request for postconviction relief where his trial counsel failed to object to testimony asserting the credibility of the accuser, as such testimony was inadmissible under the Arkansas Rules of Evi-

---

1. Appellant raised additional allegations in his Rule 37 petition that he has not pursued on appeal. Arguments not raised on appeal are deemed waived. *King v. State,* 323 Ark. 671, 916 S.W.2d 732 (1996).

dence and our court's case law. There are several different people whose testimony Appellant claims was objectionable. We will consider each one in turn.

■ At the outset, we note that this court does not reverse a denial of postconviction relief unless the trial court's findings are clearly erroneous. *Payton v. State*, 2011 Ark. 217, 2011 WL 1805340 (per curiam). A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.*

■ In making a determination on a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *Anderson v. State*, 2010 Ark. 404, 373 S.W.3d 876 (per curiam). Our standard of review requires that we assess the effectiveness of counsel under the two-prong standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Croy v. State*, 2011 Ark. 284, 383 S.W.3d 367 (per curiam).

■ Under the *Strickland* test, a petitioner raising a claim of ineffective assistance must first show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Id.* A defendant making an ineffective-assistance-of-counsel claim must show that his counsel's performance fell below an objective standard of reasonableness. *Miller v. State*, 2011 Ark. 114, 2011 WL 913206 (per curiam).

■ In order to meet the second prong of the test, the petitioner must show that counsel's deficient performance prejudiced petitioner's defense to such an extent that he was deprived of a fair trial. *Car-ter v. State*, 2011 Ark. 226, 2011 WL 1896765 (per curiam). A claimant must show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Mingboupha v. State*, 2011 Ark. 219, 2011 WL 1805339 (per curiam). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

Appellant asserts that in a case such as this one, which relied almost solely on the credibility of the child-accuser, he was prejudiced by his counsel's failure to object to witnesses' testimony that K.M. was credible. According to Appellant, had trial counsel objected to such testimony, which improperly buttressed the State's case, his objections would have been sustained. Appellant further asserts that the failure to object satisfies the cause prong of *Strickland*, while the fact that the State's case relied almost exclusively on K.M.'s credibility satisfied the prejudice prong.

The first person's testimony that Appellant takes issue with is Jamie Moore, an investigator with the Crimes Against Children Division of the Arkansas State Police. Moore was assigned to investigate K.M.'s allegations against Appellant. At trial, in response to a question about whether she interviewed the victim's father, Chris Montgomery, Moore responded that she had and that she then closed the investigation with a true finding.

The circuit court found that Appellant failed to demonstrate any prejudice with regard to this allegation, as defense counsel questioned Moore at length about her investigation and elicited testimony that a true finding need only be supported by a preponderance of the evidence. The circuit court then concluded that this was a matter of trial strategy and not a basis for postconviction relief.

The circuit court is correct that a trial counsel's decision not to object is one of trial strategy and outside the purview of Rule 37.1. *Lee v. State*, 343 Ark. 702, 38 S.W.3d 334 (2001). However, the error in the circuit court's analysis of this issue lies in the fact that we have nothing in the record before us from which we can determine that the failure to object in this instance was actually a matter of trial strategy. There was no hearing, and Appellant's trial counsel has never been questioned as to why he did not object. Where, as here, the State's case hinged almost solely on the credibility of the victim,[2] we cannot just assume that an attorney's failure to object to testimony that indirectly bolstered the victim's credibility was a matter of trial strategy. Accordingly, the circuit court erred in denying relief on this point without first holding a hearing.[3]

Next, Appellant asserts that his counsel should have objected during the State's questioning of Trish Smith, an intake social worker at Arkansas Children's Hospital. The State questioned Smith about K.M.'s allegations that Appellant would sometimes touch her inappropriately while she sat next to him, under a blanket, watching television, while her grandmother, Mary DeMaris, sat on the other side of Appellant. Appellant asserts that the following testimony was objectionable:

> [THE STATE:] Well, let me ask you Trish, based upon your experience in dealing with victims of sexual abuse and

[K.M.] is telling you a scenario about how it's her, it's the alleged perpetrator, and then this other lady. Is that believable? Is that plausible on any other cases that you've ever worked that involved digital penetration or any type of sexual abuse?

> [SMITH:] Well, it doesn't require a whole lot of motion or even necessarily to take her clothes off. He could have been reaching inside of her pajamas or her panties without disturbing anything else while you're watching TV.

> [THE STATE:] Anything about the incident that she describes about that occurring, anything to cause you to believe that, that is not real, that could not have happened just because of another person being in possible close proximity?

> [SMITH:] No. And I don't know that [the] grandmother was awake. I mean, that she was present. She could have fallen asleep. I don't know. And I don't know that [K.M.] knew.

Smith was then questioned about the victim's mother and allegations that she coerced the victim into making the allegations against the accused:

> [THE STATE:] Based upon your conversation that you had with the mother, do you feel that she in any way coerced the child into the statements that she made to you?

> [SMITH:] No, I don't think she did and [K.M.] didn't act like this was anything that was coerced at all.

---

2. In evaluating the sufficiency of the evidence, the court of appeals held that K.M.'s testimony was sufficient to support Appellant's conviction. The court of appeals recognized, however, that there were inconsistencies in the reporting of her story but noted that credibility determinations are for the jury to resolve. *Montgomery*, 2010 Ark. App. 501. The only other evidence recited was the testimony of Dr. Brian Hardin, a physician at Arkansas Children's Hospital, who examined K.M. and reported finding signs of redness at the labia majora that may or may not have been symptomatic of sexual abuse.

3. Although we are reversing on this sub-point, we will address the remaining issues as they are likely to arise again on remand.

The circuit court, in considering Appellant's allegations, noted that this testimony was the subject of a pretrial motion and hearing wherein the State, over Appellant's objection, sought to introduce the testimony. The trial court allowed Smith's testimony under Ark. R. Evid. 803(4), as nontestimonial statements, because Smith's job was to assist the treating physician by determining what kind of examination was needed, who would be involved in her treatment, and any safety issues that might exist upon her release. The circuit court concluded that Appellant did not suffer prejudice by his counsel's failure to again object during trial, as such an objection would have placed emphasis on Smith's words. The court further noted that trial counsel elicited testimony from Smith that a child can be coached to make allegations of abuse.

Again, the circuit court made findings based on assumptions that counsel did not object for strategic reasons and, based on those findings, determined that this allegation presented no basis for Rule 37 relief. We simply cannot say from the face of the petition or the record before us that relief is not warranted where there is no evidence to support the circuit court's findings. A hearing is necessary to determine whether counsel's failure to object was, in fact, a matter of trial strategy.

Next, we consider Appellant's objection to testimony from Vonda Montgomery, K.M.'s mother. Vonda testified that K.M. told her that K.M.'s grandmother, DeMaris, was always present when her grandfather touched her. Vonda further testified that she was aware that a report was made to authorities that DeMaris knew of the abuse. She further testified that she received

a phone call sometime later from the investigator—she asked me questions and called me back later that day that

they had determined to have found a case against her [DeMaris].

With regard to the challenged testimony of Vonda Montgomery, the circuit court ruled that Appellant failed to state a basis for any objection to this testimony and therefore this ground was without merit.

Appellant argues on appeal that the trial court erred in finding that he failed to state a basis for his objection to this testimony, as the basis was that it was yet another example of testimony reciting credibility determinations that counsel did not object to. The State argues that

it is apparent that defense counsel believed that the fact that the investigators believed these new allegations was further reason to distrust their conclusions with respect to the appellant. This is a reasonable judgment call, especially when viewed from the counsel's perspective at the time of trial.

In sum, the State argues that this issue was also a matter of trial strategy.

We hold that the circuit court erred in failing to consider this allegation of error, as Appellant stated a basis for his objection to the testimony. Accordingly, this issue must be considered on remand.

Next, Appellant asserts that his counsel should have objected to testimony by Carrie Garrison, a counselor who worked with K.M. When asked to describe K.M.'s personality to the jury, Garrison stated that "[s]he's just a really great kid. A fun kid, positive kid. Seemed smart." Later in her testimony, Garrison again referred to K.M. as a "great kid," and later as an "an awesome kid."

The circuit court found this allegation of error to be without merit based on a finding that the statements were not opinion or reputation evidence, but were mere descriptions of the child and her demeanor.

The circuit court reasoned that counsel cannot be ineffective for failing to make a meritless objection.

According to Appellant, these statements constituted expressions of opinion and were not admissible under Ark. R. Evid. 608(a). The State counters that these statements did not amount to character evidence and any objection by counsel "may have appeared heavy handed to the jury. It was hardly deficient to avoid going down that road."

 Rule 608 provides that the credibility of a witness may be supported by opinion or reputation evidence only to the extent that the evidence refers to the character for truthfulness and the evidence of truthful character is only admissible after the character of the witness has been attacked. The testimony at issue in this instance does not conform to the requirements of Rule 608, and any objection to this testimony would not necessarily have been without merit. The failure to object to this testimony is a matter to be considered upon remand.

 Finally, Appellant argues that counsel was ineffective in failing to object to the following testimony by Garrison:

[THE STATE:] Did she ever say anything for you to question her credibility when she would discuss the incident of sexual abuse?

[GARRISON:] No. She was always credible. I believed everything she said. I've not had any child come to me for sexual abuse that wasn't telling the truth at that age.

Thereafter, Appellant's trial counsel objected on the basis of the extension of the determination of credibility to all children, but did not object to the statement on the credibility of K.M. In response, the trial court gave the following curative instruction:

Ladies and Gentlemen, the witness has made a comment about credibility of this child and credibility of other children in response to a question. An objection has been made. I have sustained the objection so you are not to consider any testimony about credibility.

The circuit court found that Appellant's allegation of error related to this testimony was not a basis for postconviction relief because the trial court gave a curative instruction that specifically referenced all testimony about credibility.

We agree with the circuit court's conclusion that Appellant cannot demonstrate prejudice based on his counsel's failure to specifically object to the statement regarding the victim's credibility where the trial court gave a curative instruction related to all issues of credibility. Accordingly, Appellant is not entitled to relief on this point, and we affirm the circuit court on this issue.

## II. *Failure to Object to Testimony About Patterns of Behavior*

Next, Appellant asserts that the circuit court erred in denying his request for relief based on his assertion that trial counsel was ineffective in failing to object to improper profiling testimony, as well as testimony about patterns of behavior of child-sexual-abuse victims. In support of his argument on this point, Appellant relies on this court's opinions in *Brunson v. State*, 349 Ark. 300, 79 S.W.3d 304 (2002), and *White v. State*, 367 Ark. 595, 242 S.W.3d 240 (2006). According to Appellant, Smith's testimony was inadmissible profile evidence under *Brunson* and *White*, as was her speculation about children and why they lie or do not lie.

The State argues to the contrary that Smith's testimony about grooming was a mere part of an explanation for the vic-

tim's unemotional response when reporting the abuse by her grandfather. As to her testimony about why children might lie about abuse, the State contends it was presented to address the issue of "coaching" raised by the defense.

The testimony that Appellant asserts his counsel should have objected to is as follows:

[THE STATE:] Did [K.M.] tell you whether or not the defendant told her not to tell anyone about him touching her?

[SMITH:] Yes. I asked her if he said anything to her about this and she said he told me not to tell. This was the first time mom had heard this and she became very tearful when she heard that. [K.M.] was able to look straight at me and talk to me without regard for anyone else in the room and what they were doing or saying or looking at her. She made no effort to try and make eye contact with me to see if she was saying the right things or doing the right things during this time. But it did upset mom and she did start crying. [K.M.] then turned because mom made a gasping noise of some kind I think. Anyway, drew her attention in some way.

[THE STATE:] Knowing about [K.M.] going through several different homes in her short life span and the knowledge you have of children that are in adopted or foster homes, what type of reaction would you expect [K.M.] to have or what type of reaction did she express because of the emotion she felt because of this abuse?

[SMITH:] She didn't actually express much emotion about it at all. I think with children they want to please. Children this age want to please. I'm sure there was a period of time when they had contacts together that were very positive, that involved just normal grandparent interactions so she was comfortable with him. A lot of the literature speaks of grooming in terms of having a longer term relationship with someone so that you gradually move into doing these kinds of things with children. Particularly if it's a child within your family or within your extended family, you're going to see them over and over.

[THE STATE:] And you say grooming and that means slowly progressing the relationship and the contact?

[SMITH:] Yeah. Progressing the relationship and contact to see what happens. Children often disclose information kind of that way, too. They'll say a little bit and then depending on the reaction they get from the adults around them they care about, they may or may not tell you more.

[THE STATE:] And that's another point I wanted to ask you about, why is it so important depending on the reaction that the children get from whether it be their guardians or their parents, as far as how they react to disclosure of that sexual abuse?

[SMITH:] Uh, children—I mean, a lot of us like to think they only say this to get back at people or hurt people or because they have some goal. What they get out of disclosing this is not a positive thing. Children do lie. Absolutely they do. They lie to keep from being punished. They lie to keep from being in trouble. They may lie to get something positive like, you know, do you want to go with so and so and we're going to get ice cream. Even if you don't really want to go to so and so, you may say yes, I want to go because I want to get the ice cream. So children tend to lie to get out of trouble to keep from being punished. That's the main reason children lie. They don't lie about sexual abuse

because they think they are going to get a reward for it. If you think about it, the things that happen when children reveal this are not positive things.

The circuit court first found that Montgomery failed to state specific facts to support his allegation regarding the testimony about what abused children do or do not do; thus, the court was unable to make a determination as to whether relief was warranted. With regard to the testimony about "grooming," the circuit court found that even if counsel's conduct in failing to object was in error, Montgomery could not establish prejudice and the court would not presume prejudice.

 The circuit court erred in not considering Appellant's argument and finding that Appellant's objection to the testimony about how child-abuse victims act was not supported by specific facts. Appellant stated in his petition that this testimony was objectionable under this court's case law that prohibits "testimony about how other persons behave for the purpose of proving that this person falls within that category." Moreover, we cannot state based on the face of the petition or the record before us that Appellant's assignment of error to the testimony about the behavior of child-sexual-abuse victims, and specifically whether they may fabricate allegations of abuse, is wholly without merit.

In *Logan v. State*, 299 Ark. 255, 773 S.W.2d 419 (1989), this court reversed and remanded on direct appeal where the trial court allowed a doctor to testify to his opinion about whether a child-abuse victim could fabricate the allegations. This court held as follows:

> It is clear from the hypothetical questions and answers that the doctors were informing the jury that in their opinion the victim was telling the truth. This is exactly the situation which caused us to reverse the case of *Johnson v. State*, 292

Ark. 632, 732 S.W.2d 817 (1987). We also held that it was error to allow a psychologist to give testimony that the history given by a child victim was consistent with sexual abuse in *Russell v. State*, 289 Ark. 533, 712 S.W.2d 916 (1986). The doctor should not have been allowed to testify that the victim was telling the truth. This error was prejudicial.

*Id.* at 257, 773 S.W.2d at 420–21.

Although the State claims that the testimony was elicited in response to allegations that the victim in this case may have been coached, the actual testimony went beyond whether there was evidence of coaching with this particular victim. In other words, the testimony distracted from the real issue at hand and the broad assumption that child-abuse victims do not lie about such abuse may have been prejudicial, particularly in a case such as this one where the State's case turned, almost solely, on the victim's credibility.

 Moreover, the circuit court erred in summarily dismissing Appellant's claim with regard to the profiling testimony on the basis that, even if there was error, Appellant could not demonstrate prejudice. The generalized testimony presented here is similar to testimony challenged in *Hall v. State*, 15 Ark. App. 309, 692 S.W.2d 769 (1985). There, the appellant challenged expert testimony by a licensed psychologist about child-sexual-abuse cases. In holding that such evidence was partially inadmissible, the court of appeals noted the following:

> It is our conclusion from the record in the case before us that the evidence of the expert, Dr. Van Kirk, tended to focus the attention of the jury upon whether the evidence against the defendant matched the evidence in the usual case involving sexual abuse of a young

child. Much of the expert's testimony highlighted details that were parallel to the details in the case at hand. For example, the defendant here was known to the children involved. The expert testified that in 75% to 80% of such cases the perpetrator is known to the children involved. The children here were told not to tell what happened. The expert said the children are almost always told not to tell what happened. The crime here is alleged to have occurred in the home of the children. The expert testified that 50% of child sexual abuse cases occur in either the home of the child or the perpetrator. The defendant here was 32 years of age. The expert testified that in child abuse cases the first offense is virtually always committed before the age of 40. The defendant here had had trouble with alcohol. The expert testified alcohol or drugs is "often a dynamic." Other details could be recited but it is enough to say that we feel this type evidence was not of proper benefit to the jury in this case and that, as in [People v.] Bledsoe [36 Cal.3d 236, 203 Cal.Rptr. 450, 681 P.2d 291 (1984)], it was not introduced to rebut a misconception about the presumed behavior of a rape victim but to prove, as in [State v.] Saldana [324 N.W.2d 227 (Minn.1982)], that the circumstances and details in this case match the circumstances and details usually found in child abuse cases.

Id. at 316–17, 692 S.W.2d at 773.

Again, we cannot affirm the written finding of the circuit court on this point, as it is not apparent from the face of the petition or the record before us that Appellant is not entitled to relief on this allegation. In sum, this issue requires further consideration upon remand.

### III. Failure to Object to Constitutional Violations

As his third point on appeal, Appellant asserts that he was entitled to Rule 37 relief because his trial counsel was ineffective in failing to object to certain testimony elicited in violation of his constitutional rights. Specifically, Appellant asserts that testimony that he invoked his right to counsel violated his rights under the Fifth and Fourteenth Amendments to the United States Constitution. Further, Appellant argues that his constitutional rights were violated when the State elicited testimony about statements made by Appellant while under surveillance in the interrogation room, as it amounted to introduction of a custodial statement made after an invocation of rights.

The State counters that the failure to object to Appellant's invocation of his right to counsel was not a basis for relief as any objection by his attorney might have cast Appellant's request in a more suspicious light or called more attention to it. Further, the State argues that Appellant's counsel could not be ineffective for failing to object in these instances, as there were no constitutional violations.

During the testimony of Shannon Anthony, the Chief Deputy with the Greene County Sheriff's Office, the State asked Anthony if Appellant ever claimed that K.M. was lying about the allegations. Anthony replied,

No. He did not state that she was lying. I questioned him about the allegations and told him what she had disclosed, and he just kept saying it didn't happen. At one point, I asked him well, are you saying she's lying. He never would answer. At that point, I believe, is when he requested an attorney.

Appellant's counsel did not object, and Appellant now asserts that this testimony was a violation of the doctrine set forth in

*Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), which prohibits the State from eliciting evidence regarding a defendant's post-arrest, post-*Miranda*-warning invocation of the right to silence or the right to counsel.

The circuit court ruled that *Doyle* was distinguishable as this case did not involve an attempt by the State to use Appellant's silence to impeach Appellant and, thus, Appellant could not demonstrate prejudice. We agree.

■ The statement was in response to a question by the State about whether Appellant ever claimed the victim was lying. It was not the result of a specific question about Appellant's invocation of rights. This court has held that where a comment on the defendant's post-arrest silence is not an attempt to impeach the defendant, it is not the type of comment prohibited by the court in *Doyle*. *Robinson v. State,* 348 Ark. 280, 72 S.W.3d 827 (2002); *Bell v. State,* 334 Ark. 285, 973 S.W.2d 806 (1998). As such, Appellant's counsel could not have been ineffective in failing to make a meritless objection, and this assertion of error presents no basis for postconviction relief.

■ The State then inquired about statements made by Appellant while alone in the interview room but under observation by Anthony and another officer, Patrick Lenderman. Lenderman testified that after Anthony left the interview room, he was able to observe Appellant via a camera located in the interview room. When asked what he had observed, Lenderman testified that he

> observed Mr. Montgomery sitting in the room, kind of just rocking back and forth in his chair looking to me, which would be a nervous act. After I had watched him for a few minutes sitting there, I noticed him stick his hands up and put his head down in his hands and

say, what have I done. I basically watched him there. Shannon had come back in the room and I advised Shannon of what I had saw.

Again, no objection was made by Appellant's counsel.

Appellant now asserts that Lenderman's testimony about what he heard Appellant say was a violation of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which prohibits the introduction of custodial statements after there has been an invocation of rights.

The circuit court found unavailing Appellant's argument that Lenderman's testimony about the statements Appellant made while in the interview room resulted in a violation of his constitutional rights. The circuit court then concluded that counsel was not ineffective for failing to make a meritless objection. Again, we agree.

*Edwards* is not applicable to the facts present here. Appellant, although in custody, did not make the statements in response to any questioning by authorities. It was a spontaneous statement. Citing to *Edwards,* this court has explained that the Fifth Amendment right to counsel attaches during custodial interrogation. *Osburn v. State,* 2009 Ark. 390, 326 S.W.3d 771. We further explained in *Stone v. State,* 321 Ark. 46, 900 S.W.2d 515 (1995), that spontaneous statements are not compelled or coerced in any significant way under the Fifth Amendment's privilege against self-incrimination. Thus, there was no constitutional violation that resulted from Lenderman's testimony, and Appellant's counsel was not ineffective in failing to object to this testimony. In sum, this allegation did not warrant Rule 37 relief.

### IV. *Failure to Request Certain DNA Testing*

■ Appellant next argues that his trial counsel was ineffective in failing to re-

quest further DNA testing on a condom found in the victim's bed. Appellant asserts that he and the victim were excluded as contributors to DNA found on the condom and that his trial counsel should have sought further testing of other persons in the household because, for example, if Vonda Montgomery's DNA was found on the condom, it would have buttressed his defense that Vonda coerced or induced K.M. to make up the allegations against him. The State counters that this allegation of error does not provide a basis for relief, as it was nothing more than a conclusory allegation and, moreover, any such evidence was irrelevant as it had no connection to this crime.

The circuit court ruled that trial counsel did in fact seek testing, which excluded Appellant as a contributor of DNA material on the condom. Moreover, the circuit court found that Appellant failed to show what the omitted testimony or other evidence was and how it would have changed the outcome of the trial, which was important considering that no scientific testing is required to sustain a conviction for rape.

We agree with the circuit court's conclusion that this allegation of error does not warrant postconviction relief. First, the condom was tested once and excluded Appellant as the contributor of the DNA, a fact that could have been construed in Montgomery's favor. Second, even if further testing were to demonstrate that Vonda or another member of the household was a contributor to the DNA found on the condom, it could not be said that the outcome of Appellant's trial would have been different. The charge against Appellant was based on allegations that he digitally penetrated K.M. The only relevance of the condom is that it was found in K.M.'s bed and ultimately led to the investigation against Appellant. Thus, we agree with the circuit court that this allegation of error does not present a basis for postconviction relief.

## V. Failure to Call Chris Montgomery as a Witness

Finally, Appellant argues that his trial counsel was ineffective in failing to call Chris Montgomery, his son and K.M.'s father, as a witness at trial. With regard to this specific point, Montgomery asserts that the only way he could sufficiently prove this allegation was by calling trial counsel at a hearing and, thus, it was error for the circuit court to deny the requested relief without holding a hearing.

The State counters that the decision to call a witness is a matter of trial strategy and does not warrant Rule 37 relief. The State further argues that there was no evidence that Chris would have been willing to testify at trial and that any testimony he gave would have been limited to the collateral issue of the grandmother's knowledge of the abuse.

The circuit court rejected Appellant's argument on this point on the basis that any decision on whether to call Montgomery as a witness was a matter of trial strategy. We reverse the circuit court on this point.

Attached to Appellant's Rule 37 petition was an affidavit by Chris, which stated the following:

I originally did not object to the reporting of the allegations against my father to the authorities. However, shortly after they were reported, I saw and heard incontrovertible evidence of coaching of K.M. by Vonda Montgomery. Vonda repeatedly made the statement to me, "I better not find out your mother knew." Then after Vonda Montgomery had continually made that statement, I saw my daughter K.M. nonchalantly walk through the living

room repeatedly saying "I think Grandma Mary knew." I also would have testified that Vonda Montgomery's claims that she wanted to reconcile with me were false.

I was prepared to testify at trial to these facts and would have done so if Mr. Rees had called me.

Again, there was no proof that the decision not to call Chris Montgomery was one of trial strategy, as this petition was denied without a hearing. In the absence of a hearing, Montgomery was not able to actually question his trial counsel about his reasons for not calling Chris.

Moreover, the State is simply incorrect in asserting that there was no evidence that Chris would have testified at trial, where in his affidavit he states that he would have testified at trial if called upon. Finally, we cannot say with certainty, as the State does, that Chris's testimony would have had no impact on the outcome of Appellant's trial, as this case turned on the credibility of the child-victim and evidence of coaching by the mother, even in regard to the grandmother's knowledge, may have been pertinent. Thus, we cannot say from the face of the petition and the record before us that Appellant is not entitled to relief on this point.

Affirmed in part; reversed and remanded in part.