

# SUPREME COURT OF ARKANSAS

No. CR–12–60

| | |
|---|---|
| TERRY EDWARD HAYES | **Opinion Delivered** March 6, 2014 |
| APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT |
| V. | [NO. CR09-286-1, CR09-1315-1] |
| STATE OF ARKANSAS | HONORABLE WILLIAM A. STOREY, |
| APPELLEE | JUDGE |
| | AFFIRMED. |

**JOSEPHINE LINKER HART, Associate Justice**

This is an appeal from the denial of postconviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure. By per curiam order handed down November 7, 2013, we remanded this case to settle the record because there were gaps and inconsistencies in the material we had before us that prevented us from determining whether we had jurisdiction to take up this petition. A supplemental transcript has been filed resolving our concerns.

Petitioner Terry Edward Hayes is in the custody of the Arkansas Department of Correction after a jury convicted him of aggravated assault on a family or household member, first-degree terroristic threatening, felon in possession of a firearm, and intimidating a witness. The charges involved Hayes's fourteen-year old son Shad. According to Shad, Hayes held a gun to his head during an angry telephone conversation with Hayes's long-time girlfriend, whom Shad referred to as "Mom." Thereafter, Hayes evaded the police by taking Shad into the woods on his property. The following day, Hayes took Shad to the police,



where he instructed his son to give a false story.

Hayes appealed his conviction to the court of appeals. The court of appeals held that the circuit court did not abuse its discretion in refusing to grant a continuance to allow his trial counsel to prepare for the sentencing phase of the trial. However, it reversed and remanded because the circuit court denied Hayes's new-trial motion without holding a hearing. *Hayes v. State*, 2011 Ark. App. 79, 381 S.W.3d 117.

Just after the sentencing hearing, Hayes was arraigned on the charge of failure to appear. *Id.* His trial counsel noted that Hayes had been diagnosed with bipolar disorder and was on medication. *Id.* Trial counsel moved for a mental evaluation, and the circuit court granted the request. *Id.* Nonetheless, the circuit court denied Hayes's new-trial motion without a hearing. *Id.*

On remand, Hayes waived a hearing on his new-trial motion and entered a guilty plea on the failure-to-appear charge. With the assistance of counsel, Hayes pursued postconviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure. After a hearing, the circuit court denied Hayes's petition. He filed a notice of appeal from that ruling. Hayes then filed with the circuit court a motion to reconsider, arguing that the circuit court failed to rule on a number of points that he had raised. Hayes subsequently filed a supplemental notice of appeal. He now argues that 1) this case must be remanded to the circuit court with instructions to rule on claims that it had ignored in its order and for failing to rule on his motion for reconsideration; and 2) the circuit court erred in finding that his trial counsel was not ineffective. We affirm.

SLIP OPINION

In order to show that his counsel was ineffective, a convicted person must prove that the representation fell below an objectively reasonable standard and that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Nance v. State*, 339 Ark. 192, 4 S.W.3d 501 (1999) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). This reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* When this court reviews an order that denies postconviction relief, we do not reverse unless the trial court's findings are clearly erroneous. *Britt v. State*, 2009 Ark. 569, 349 S.W.3d 290 (per curiam). A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.*

In his Rule 37 petition, Hayes asserted that his trial counsel committed eight "actions or omissions" that constituted ineffective assistance of counsel. They are as follows:

> 1. In the testimony of Shad Hayes in the State's case in chief, trial counsel failed to object to irrelevant and highly prejudicial testimony that Terry Hayes had held a gun to Teresa Coleman's head at sometime in the three weeks previous to the incident on trial. This should have been excluded under Rules 401, 402, 403, and was not proper character evidence under Rule 404(a). Additionally, its inclusion despite its irrelevance and prejudicial nature was of sufficient unfairness to violate Terry Hayes's federal and state constitutional rights of due process of law.
>
> 2. In the testimony of Detective Scott McAfee, trial counsel failed to object to irrelevant and highly prejudicial testimony that Terry Hayes was wanted for violating the conditions of his bond. This testimony should have been excluded under Rules 401, 402, 403, and was not proper character evidence under Rule 404(a). Additionally, its inclusion despite its irrelevance and prejudicial nature was of sufficient unfairness to violate Terry Hayes's federal and state constitutional rights of due process of law.

3

SLIP OPINION

3. Further in McAfee's testimony trial counsel failed to object to testimony in which McAfee contradicted the testimony of Rick Frazier. The ineffectiveness consisted of (I) failing to object to irrelevant and prejudicial testimony inter alia that Frazier had said he was afraid of Hayes; (ii) that Hayes had discussed fleeing; and (iii) a failure to seek the limiting instruction of AMI Crim. 2d 202 that prior inconsistent statements (here elicited at T 403-406 and elsewhere) in which Frazier allegedly described dealing with Hayes before, during and after the incident—including arranging for Hayes to hide in a motel and dealing with a gun—are not to be considered for the truth of the matter asserted in the allegedly inconsistent statements. As a result, the jury necessarily would have improperly considered the unsworn alleged statements of Frazier for the truth of the matters asserted in McAfee's rendition of the alleged Frazier statements. It is true that AMI Crim. 2d 202 was given at the end of the trial, but the note on use provides that it should be given at the time the prior inconsistent statement is admitted into evidence. This is obviously so that a jury composed of lay persons untrained in the rules of evidence will be able to understand the purposes for which the evidence can and cannot be considered. Moreover, in closing argument, the prosecutor argued the McAfee evidence for the truth of the matter asserted, again without objection. This improper admission also violated Hayes's federal and state constitutional rights of confrontation and due process by permitting unsworn hearsay allegations to be introduced as evidence against him.

4. In the testimony of Detective Gary Conner, trial counsel failed to object to the testimony concerning a warrant against Hayes for unlawful flight to avoid prosecution and that a court had doubled Hayes's bond because he supposedly was a flight risk. This should have been excluded under Rules 401, 402, 403, and was not proper character evidence under Rule 404(a). It is also of sufficient unfairness to violate Terry Hayes's federal and state constitutional rights of due process of law.

5. In the testimony of Teresa Coleman in the defense case, trial counsel again failed to seek the AMI Crim. 2d 202 instruction when the State impeached Coleman with her prior inconsistent statement. Although Coleman generally exonerated Hayes at trial, the alleged prior statement inculpated Hayes. This caused the jury to consider Coleman's unsworn statement for the truth of the matter asserted against Hayes. Trial counsel was also ineffective in failing to object to the introduction of State's Ex. 23, the text of the statement itself, despite the fact that she admitted making the prior statement. Such extrinsic evidence is not admissible if the witness admits making the prior statement. Rule 613, ARE, *Winkle v. State*, 374 Ark. 128, 135, 286 S.W.3d 147, 152 (2008).

6. In the State's rebuttal case, trial counsel failed to object to the testimony of Terra Markham (particularly at T 563) and Pat Nations (particularly at T 589) in which they gave their supposedly expert opinions that Shad Hayes was telling the truth.

The case law is clear that such testimony—whether denominated as expert or lay testimony—is not admissible. *Hinkston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000); *Utley v. State*, 308 Ark. 622, 826 S.W.2d 268 (1992); *Logan v. State*, 299 Ark. 255, 773 S.W.2d 419 (1989); *Buford v. State*, 368 Ark. 87, 243 S.W.3d 300 (2006). Because of the egregious nature of this testimony, its admission also violated Hayes's federal and state constitutional rights of due process of law. Shad Hayes was the crucial witness against Terry Hayes. Thus the improper bolstering of Shad Hayes's credibility was crucial to the conviction of Terry Hayes.

7. Also in the rebuttal case, trial counsel failed to object to Officer Joseph Smith (T 592-595) and Detective Scott McAfee (T 595-597) testifying as to what Teresa Coleman had told each of them without at least seeking the AMI Crim. 2d 202 instruction that her prior inconsistent statements could not be considered for the truth of the matter asserted in the statement. Smith quoted Teresa Coleman as saying that Hayes had committed the crimes he was accused of, in contradiction to Coleman's trial testimony McAfee quoted Coleman as saying that witness William (Smokey) Henson would lie for Terry Hayes. As a result, the jury would have improperly considered the unsworn alleged statements of Coleman for the truth of the matters asserted. This also violated Hayes's federal and state constitutional rights of confrontation and due process by permitting unsworn hearsay allegations to be introduced as evidence against him.

8. Furthermore the McAfee testimony quoting Coleman about Henson's credibility was inadmissible hearsay because it was offered for the truth of the matter asserted, i.e., that Henson was not credible. In addition to violating hearsay prohibitions (Rule 801 et seq.), it also violated federal and state constitutional rights of confrontation and due process of law.

Summing up his points, Hayes asserted that "there is no strategic or tactical justification," despite his trial counsel's claims to the contrary, for disregarding the "elemental rules of evidence and constitutional law" by failing to object and seek the necessary limiting instructions.

After a hearing in which Hayes challenged his trial counsel's actions with regard to each point raised in his Rule 37 petition, the circuit court, as previously noted, denied Hayes's claim of ineffective assistance of counsel. The circuit court made the following

SLIP OPINION

findings of fact and conclusions of law in its order, which we copy in pertinent part because

it is necessary to dispose of Hayes's first issue on appeal.

A.  The Court makes the following findings of fact:

. . . .

7.  That trial counsel did not object to the testimony of Shad Hayes that Terry Hayes had held a gun to Teresa Coleman's head.

8.  That trial counsel did not object to the testimony of Detective Scott McAfee that Terry Hayes was wanted for violating conditions of his bond.

9.  That trial counsel did not object to Detective McAfee's testimony which contradicted the testimony of Rick Frazier.

10.  That trial counsel did not object to the testimony of Detective Gary Conner that a warrant had been issued against Defendant Terry Hayes for unlawful flight to avoid prosecution and that Defendant's bail bond had been doubled because Defendant was allegedly a flight risk.

11.  That trial counsel did not object to the testimony of Terra Markham and Pat Nations as to the truthfulness of Shad Hayes.

12.  That trial counsel did not object to the testimony of Officer Joseph Smith and Detective Scott McAfee as to what Teresa Coleman had told each of them.

13.  That trial counsel objected to the testimony of Detective Scott McAfee wherein he contradicted the testimony of Rick Frazier.

B.  The Court makes the following conclusions of law:

1.  The trial counsel's decision not to object to Shad Hayes's unsolicited testimony that Terry Hayes held a gun to Teresa Coleman's head was based upon trial tactics or trial strategy and was supported by reasonable, professional judgment.

2.  That Detective Scott McAfee's testimony that Defendant Terry Hayes was wanted for violating conditions of his bond was admitted by Defendant in his testimony and was therefore not prejudicial.

3.  That the testimony of Detective Gary Conner that a warrant had been issued



against Defendant Terry Hayes for unlawful flight was admitted by Defendant in his testimony and was therefore not prejudicial.

4. That State's Exhibit Number 23 was admitted to refresh Teresa Coleman's memory after she testified that she could not remember whether or not she made the statement and therefore the exhibit was admissible extrinsic evidence.

5. That the testimony of Terra Markham and Pat Nations relating to the victim's character for truthfulness in the State's rebuttal case was proper and admissible evidence after the victim's character for truthfulness became an issue.

6. The trial counsel's decision not to object to the testimony of Officer Joseph Smith was based upon trial tactics or trial strategy and was supported by reasonable, professional judgment.

7. That Detective Scott McAfee's testimony quoting Teresa Coleman's testimony that William Henson was not credible is admissible evidence as a prior inconsistent statement, and did not result in a violation of the confrontation clause inasmuch as Teresa Coleman was a witness at trial.

8. The trial counsel's decision to request the prior inconsistent statement limiting instruction, AMI Crim. 2d 202, at the conclusion of the trial was based upon trial tactics or trial strategy and was supported by reasonable, professional judgment.

9. That Defendant Terry Hayes has failed to demonstrate that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution.

10. That Defendant Terry Hayes has failed to demonstrate that counsel's performance prejudiced his defense to such an extent that Petitioner was deprived of a fair trial.

11. That Defendant Terry Hayes has failed to demonstrate that there is a reasonable probability that the fact finder's decision would have been different absent counsel's errors.

After the entry of the circuit court's order, Hayes filed a motion to reconsider.[1] He

---

[1]We are mindful that Rule 37.2(d) of the Arkansas Rules of Criminal Procedure states: The decision of the court in any proceeding under this rule shall be final when the judgment is rendered. No petition for rehearing shall be considered.

alleged that the circuit court failed to rule on point 3 of his Rule 37 petition; the portion of point 5 of his Rule 37 petition in which he asserted that it was error not to give the AMI Crim. 2d 202 instruction when the State impeached Teresa Coleman; and that part of point 7 concerning Detective Scott McAfee.

On appeal, Hayes first argues that we must remand this case to the circuit court with instructions to rule on the claims that it ignored in its order and failed to rule on after he had filed a motion for reconsideration. He asserts that this court's recent holding in *Strain v. State*, 2012 Ark. 42, 394 S.W.3d 294, that when a circuit court fails to rule on an issue raised in a Rule 37 petition, the petitioner is not without recourse because he may redress that omission by filing a writ of mandamus with this court, violates his right to due process and must be overruled.

As a preliminary matter, we must first determine what questions, if any, remain for the circuit court to rule on. Initially, Hayes asserted that the circuit court had failed to rule on whether his trial counsel was ineffective for failing to request a limiting instruction, AMI Crim. 2d 202, at the time testimony was received. Specifically, he asserted that the circuit court failed to rule on his Rule 37 petition point 3, concerning Detective McAfee's testimony about Rick Frazier's prior inconsistent statement; point 5, Teresa Coleman's prior inconsistent statement; and point 7, Detective McAfee's testimony about Teresa Coleman's

---

However, in our Rule 37 jurisprudence we have recognized that, following the denial of a petition for postconviction relief, a request that the trial court modify its order to include an omitted issue is not a request for a rehearing that is prohibited by this rule. *Carter v. Chandler*, 2012 Ark. 252.

prior inconsistent statements. However, in his original reply brief and in the brief that he has filed after we remanded this case to settle the record, Hayes concedes that the circuit court did rule on the AMI Crim. 2d 202 instruction and "Coleman's statement about William Henson recounted in McAfee's testimony." Accordingly, this concession completely subsumes point 5. Likewise, the concessions reach portions of points 3 and 7, in which Hayes discusses AMI Crim. 2d 202.

As for the remaining parts of point 3, we note that the circuit court in its finding of fact number 9 states that Hayes's trial counsel "did not object to Detective McAfee's testimony which contradicted the testimony of Rick Frazier," but goes on to state, without any specific reference to any part of Hayes's Rule 37 petition, in finding of fact number 13 that "trial counsel objected to the testimony of Detective Scott McAfee wherein he contradicted the testimony of Rick Frazier." While one of these contradictory rulings may be erroneous, it is nonetheless a ruling. With regard to the remaining portion of point 7, which alleges ineffective assistance of counsel for failing to object to the testimony of Detective McAfee in the rebuttal case, the circuit court did rule on this matter, finding in its conclusion of law number 7 that the testimony was an admissible, prior inconsistent statement. Similarly, contrary to Hayes's assertion, the circuit court found that Hayes's trial counsel had objected to McAfee's testimony "wherein he contradicted the testimony of Rick Frazier." Accordingly, all of Hayes's assertions under points 3, 5, and 7 have been ruled on, and therefore we see nothing that remains for the circuit court to do.

Moreover, Hayes correctly notes that this court has stated that in the event that a

SLIP OPINION

circuit court has not ruled on a motion, it is incumbent on petitioner to seek a writ of mandamus to compel the circuit court to rule. *Strain*, *supra*. Hayes suggests that *Strain* should be overruled; however, under the facts set out in this case, we do not find that such consideration is warranted. Accordingly, even if any of Hayes's allegations have not been ruled on by the circuit court, his failure to seek a writ of mandamus bars further action. We affirm on this point.

Hayes next argues that the circuit court erred in failing to find that his trial counsel was ineffective. He raises five subpoints that we will discuss in turn, adding as necessary a summary of the relevant trial testimony.

He first asserts that his trial counsel was ineffective because he failed to object to the testimony by Terra Markham and Pat Nations. Markham testified that she was Shad's caseworker when he was taken into ADHS custody. She testified as follows.

> Q. Okay, and doing this [working as his caseworker], do you communicate with Shad a lot?
>
> A. Yes.
>
> Q. Did you?
>
> A. Yes.
>
> Q. Okay, and in all those communications did he ever, you know give you any indication that he was not telling the truth?
>
> A. No.

Pat Nations testified that she was Shad's psychotherapist while he was an in-patient at Vista Health. Nations stated that, as part of Shad's therapy, she had "almost daily" conversations

with him about the alleged incident. She testified in pertinent part as follows.

> Q. Okay, and in those talks did you ever and based on your experience, did you ever get any signs of deception about what his father did to him?
>
> A. None whatsoever.
>
> Q. None whatsoever?
>
> A. He was consistent throughout. When he talked about his relationship with his father from the moment that he came into my care until he was discharged, which was several months later, I never saw any inconsistency with his story or his situation, his recall of his father's and his relationship over the years, since early years. It was very consistent.
>
> Q. Very consistent.
>
> A. Yes.

The allegation that Hayes's trial counsel was ineffective for failing to object to this testimony was set forth in point 6 of his Rule 37 petition.

At the Rule 37 petition hearing, Hayes's trial counsel stated that he did not find the testimony objectionable. In its order, the circuit court found that the disputed testimony was admissible character evidence under Rule 608 of the Arkansas Rules of Evidence. Hayes asserts that neither response was correct. He states that the rule is clear—evidence of truthful character "can only be for opinion or reputation for truthfulness," and there was no attempt to elicit testimony regarding Shad's reputation for veracity. Instead, the questioning concerned whether Shad had been telling the truth about that incident. Hayes alleged that this testimony prejudiced him because these witnesses placed "an improper official imprimatur of credibility upon Shad Hayes."

We agree that the trial court was clearly erroneous when it found that the testimony

11

of Markham and Nations was admissible character evidence. As we noted in *Montgomery v. State*, 2011 Ark. 462, 385 S.W.3d 189,

> Rule 608 provides that the credibility of a witness may be supported by opinion or reputation evidence only to the extent that the evidence refers to the character for truthfulness and the evidence of truthful character is only admissible after the character of the witness has been attacked.

The testimony at issue in this instance does not conform to the requirements of Rule 608, and any objection to this testimony would not necessarily have been without merit. *Id.* Further, we note that Markham's and Nations's testimony was essentially expert testimony concerning whether Shad was being deceptive. In *Hinkston v. State*, *supra*, this court held that such testimony was not admissible because it invaded the jury's province to determine the credibility of witnesses.

The State argues that we should nonetheless affirm on this point because Hayes's assertion of prejudice was a "conclusory" allegation that Markham's and Nations's testimony "placed an improper official imprimatur of credibility upon Shad Hayes." The State contends that this court need not "analyze the issue," but finds it is noteworthy that Hayes was not prejudiced because Shad's testimony was not the only evidence of the night's events. It points to the testimony of Coleman's son, Roger Remington, who testified that he called 911 after he had received a call from his grandmother's land line on which he overheard his mother saying, "Terry, you need to put the gun down. You're not going to do anything to hurt yourself or Shad." Further, Shad's testimony was corroborated by a deputy sheriff's discovery, on January 20, 2009, of two .45-caliber shell casings on Hayes's porch and on the ground in front of it. Additionally, Hayes fled from the residence with Shad when the police



arrived on the scene.

While we are mindful that the case before us depended heavily on Shad's testimony, the State did produce additional evidence that tended to corroborate Shad's account of what occurred on the night in question. The spent shells, the 911 call, and Hayes's efforts to elude police tend to establish that, despite the evidentiary error in admitting the testimony of Markham and Nations, the outcome of the trial would likely not have been different. Accordingly, Hayes has failed to demonstrate the requisite prejudice for finding ineffective assistance of counsel under the *Strickland* standard. *Small v. State*, 371 Ark. 244, 264 S.W.3d 512 (2007).

Hayes next argues that his trial counsel was ineffective for failing to object to the following testimony of Shad Hayes:

Q. Was Teresa Coleman staying there with you?

A. Yes sir. Within those three weeks the first of January. That's the night she left and she told me, I later found out, that within those three weeks he had also held a gun to her head.

As Hayes asserts in his Rule 37 petition, that, in addition to being hearsay, the statement is not relevant and is more prejudicial than probative. At the Rule 37 hearing, Hayes's trial counsel asserted that he did not object to Shad's statement because the testimony was just "blurted out," and he did not want to call it to the jury's attention. The circuit court found that it was a product of "trial tactics or trial strategy and was supported by reasonable professional judgment." For a full understanding of this point, it is necessary to place the testimony in question in proper context.

13

For most of his life, Shad lived with his father and Teresa Coleman. At the time of the incident, Hayes and Coleman had separated, and Shad was residing with Coleman at the residence of Coleman's mother.

At trial, Shad testified in pertinent part as follows. On the night in question, Hayes called him and told him to pack up his belongings and meet him outside. Hayes picked him up and spent the drive back to his residence on his cell phone "griping" at Coleman. According to Shad, Hayes went outside and returned with a gun. Hayes loaded the weapon and handed the phone to Shad, instructing him to tell Coleman that he was going out to shoot the two dogs. Hayes fired two shots and returned. Shad reported to Coleman that Hayes had killed the dogs. Shad stated that Hayes had told him to tell Coleman who was "next." Shad claimed he started screaming, "It's me." Shad recalled that Hayes was shaking "really bad" and "he kind of hit my forehead with the tip of the gun." At his father's orders, Shad told Coleman that Hayes was holding a gun to his head. Shad was allowed to make a sandwich, but then was made to sit next to his father on a couch. Hayes told him to report that Hayes was now holding the gun to his own head. After a while, Hayes hung up the phone and said, "Maybe we should flip a coin to see who dies."

According to Shad, Hayes ordered him to follow him out to the shop where he had a police scanner. From transmissions over the scanner, he learned that Fayetteville police were at the gate to his driveway and were preparing to enter the property on foot. Hayes told Shad to get his rifle, and Hayes hid it and a pistol in the barn. They eluded police, and Hayes summoned Rick Frazier to meet them. The next day, Hayes took Shad to the police

station where he claimed that he had disregarded his father's instructions to tell a "fake story" and told Detective Scott McAfee what had transpired. It was at this point in his testimony that Shad made the above-referenced nonresponsive statement about Teresa Coleman.

Under the facts of this case, we can find no error in the circuit court's finding that the decision by Hayes's trial counsel not to object to Shad's testimony was attributable to trial strategy. As the State argues, avoiding unwanted attention to an isolated incident of potentially objectionable testimony, particularly when it is not responsive to the question asked, is a quintessential strategy decision that is beyond the purview of an ineffective-assistance claim. *Nance*, *supra*.

Hayes next argues that his trial counsel was ineffective for failing to object to irrelevant and highly prejudicial testimony by Detective Scott McAfee that Hayes was wanted for violating the conditions of his bond. At the Rule 37 hearing, Hayes's trial counsel excused his failure to object because "the bond revocation hearing was part of the whole situation" and because Hayes's picture had been on the front page of the newspaper and he "knew it was gonna be brought up in detail, which it was." The circuit court found that the failure to object was not prejudicial because, during his testimony, Hayes admitted violating the conditions of his bond. Hayes asserts that the circuit court's rationale "missed the point" because the failure to object left him with having to "deal" with the irrelevant and prejudicial testimony.

The State contends that this argument is barred because Hayes asserts for the first time on appeal that he testified about violating the conditions of his bond only because he had to

mitigate the damage caused by Detective McAfee's testimony. The State agrees with the circuit court that Detective McAfee's testimony was harmless because similar evidence—Hayes's own testimony—was admitted.[2] The State argues further that evidence of Hayes's "flight" to Texas would certainly have been admissible. It contends that Hayes "has not alleged, much less proven, that the outcome of the proceeding would have been different had counsel only objected to the evidence that there was a warrant out for his arrest for violating the conditions of his bond."

The circuit court's finding was made after the hearing and may not have been anticipated by Hayes's Rule 37 counsel. Moreover, pursuant to Rule 37.2(d) of the Arkansas Rules of Criminal Procedure, Hayes was barred from challenging the circuit court's ruling in a motion for reconsideration. While an objection to the relevance of the testimony that Hayes violated a condition of his bond could be appropriate, the issue here is whether counsel's failure to object fell below the standard established in *Strickland*.

According to trial counsel, he made a conscious decision not to object based on his professional judgment. Matters of trial strategy and tactics, even if arguably improvident, are not grounds for a finding of ineffective assistance of counsel. *White v. State*, 2013 Ark. 171, ___ S.W.3d ____; *Chenowith v. State*, 341 Ark. 722, 19 S.W.3d 612 (2000). Moreover,

---

[2]The State urges us to find the case before us analogous to *Robinson v. State*, 348 Ark. 280, 72 S.W.3d 827 (2002), in which we refused to consider a claim that evidence was "highly prejudicial" when supported only by bare citation to the rules of evidence. The State's reliance on *Robinson* is misplaced. *Robinson* was a direct appeal, and this court held that the appellant's evidentiary argument regarding Rule 403 was barred because the appellant failed to preserve the point with a contemporaneous objection in the circuit court.

evidence of flight is admissible to show consciousness of guilt, even if the flight was not immediately after the alleged commission of the crime. *Murphy v. State*, 255 Ark. 90, 498 S.W.2d 884 (1973). Counsel is not ineffective for failing to make an argument that is meritless. *Springs v. State*, 2012 Ark. 87, 387 S.W.3d 143. We cannot say that counsel's failure to object constituted a *Strickland* violation.

In a point closely related to the previous one, Hayes argues that his trial counsel was ineffective because he failed to object to the testimony of Detective Gary Conner in which Connor stated that a warrant was issued for unlawful flight and that Hayes's bond had been doubled. Hayes contends that the testimony was not relevant and prejudicial. The testimony came in as follows:

Q. Could you tell us how you became involved in this case?

A. I became involved in the case with Mr. Hayes, besides being a deputy sheriff I'm also a special deputy United States Marshal. I'm on the Northwest Arkansas Marshal Service Fugitive Task Force. While looking for Mr. Hayes, the Sheriff's Office developed information he might be out of state in Oklahoma or Texas. Once the person who is wanted leaves the State then at that point in time the U.S. Attorney can go through a federal judge and get a federal UFAP warrant. That's a warrant for unlawful flight to avoid prosecution. As a deputy United States Marshal I was serving as a liaison between the Marshal's Service and the Sheriff's Office and attempting to locate Mr. Hayes. The UFAP warrant had been obtained for Mr. Hayes and the United States Marshal Service was actively searching for him.

Q. Detective Conner, let me interrupt you a little bit. Now, when this UFAP warrant came out, now this is in what stage of the overall current of events that's happened. I mean, was this after his arrest?

A. I believe it was the weekend before his arrest that the warrant was actually signed.

Q. Wait a minute. Before his arrest?

A. Yes, it was the weekend of about the 24th, 25th of January, I believe was when

we actually got the UFAP warrant signed and entered into the system.

Q. Okay, let me explain for the jury or let you explain to the jury. Is this after he was initially arrested and bonded out on this case?

A. The warrant that the State held for Mr. Hayes was a bond revocation warrant. He had been arrested, he had bonded out, and a warrant had been issued for his arrest as a bond revocation.

With regard to Hayes's "flight risk," the testimony was as follows.

Q. Detective, do you actually remember in that hearing that the Court actually doubled the Defendant's bond because of a flight risk, do you remember that?

A. I remember a bond was reinstated. I do not remember the specifics, I'm sorry.

The circuit court found that the testimony was not prejudicial because it was admitted by Hayes when he testified. Again the State asserts that this argument should be barred because Hayes did not make his mitigation argument below. In the alternative, the State contends that Hayes's assertion of prejudice is insufficient.

We again note the procedural difference between a Rule 37 proceeding and a direct appeal. While the testimony concerning the fugitive warrant may have been objectionable, the issue in a Rule 37 is whether the failure to object violates the standards established in *Strickland*. Hayes's trial counsel testified that he made a conscious decision not to object.

When a decision by counsel is a matter of trial tactics or strategy, and that decision is supported by reasonable professional judgment, then counsel's decision is not a basis for postconviction relief under Rule 37.1. *Mason v. State*, 2013 Ark. 492, ___ S.W.3d ___. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and a claimant has the burden of overcoming this

presumption by identifying specific acts or omissions of counsel, which, when viewed from counsel's perspective at the time of the trial, could not have been the result of reasonable professional judgment. *Id.*

We hold that evidence of the bond's reinstatement bears strongly on the analysis of the prejudice prong under *Strickland*. While the revocation of Hayes's bond cast aspersions on his character, that negative information was mitigated by the evidence of the reinstatement of his release on bond. We cannot say, based on the totality of the evidence, that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Nance*, *supra*.

Hayes next argues that his trial counsel was ineffective for failing to object to Officer Joseph Smith's testimony without requesting a limiting instruction, AMI Crim. 2d 202. Smith testified about prior inconsistent statements by Teresa Coleman after Coleman had testified that Hayes had not committed the offenses that he was charged with. Hayes's trial counsel stated that, in his professional opinion, giving AMI Crim. 2d 202 at the close of the trial was more effective than requesting it during the trial.

Once again, we note that Hayes's trial counsel made a conscious decision not to request the limiting instruction based on reasoned, professional judgment. As noted previously, strategy decisions are beyond the purview of an ineffective-assistance claim. *Nance*, *supra*. We hold that the alleged error does not support reversal of the denial of postconviction relief. *Mason v. State*, *supra*.

Affirmed.

*Jeff Rosenzweig*, for appellant.
*Dustin McDaniel*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.