2010 Ark. 454

**Kevin Ray PEARCY, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 10–362.**

Supreme Court of Arkansas.

Nov. 18, 2010.

Cullen & Co., PLLC, Little Rock, by: Tim Cullen, for appellant.

Dustin McDaniel, Att'y Gen., by: Rachel M. Hurst, Ass't Att'y Gen., for appellee.

PAUL E. DANIELSON, Justice.

Appellant Kevin Ray Pearcy appeals from the judgment and commitment order of the Garland County Circuit Court finding him guilty of capital murder and sentencing him to life imprisonment without the possibility of parole. Pearcy argues on appeal that (1) the evidence was insufficient to support the verdict; and (2) the circuit court erred in admitting certain photos into evidence. We find no error and affirm.

The relevant facts are these. On August 11, 2008, Officer Ken Kizer of the Hot Springs Police Department was patrolling the area of Park Avenue. He observed Pearcy walking in and out of surrounding yards. When Officer Kizer approached Pearcy and identified himself, Pearcy fled. Officer Kizer investigated and discovered there were warrants out of Sherwood for Pearcy. Officer Kizer then placed Pearcy into custody.

After placing Pearcy into the patrol car, Pearcy stated, without being questioned, that he wanted to confess a murder. Pearcy stated that he had killed his friend, Stacy Lewis, because he had wanted to see how it felt to kill somebody and if he could get away with it. Officer Kizer decided not to ask any questions, but he contacted his immediate supervisor and took Pearcy to the police station.

Once at the station, Detective Lonell Lenox advised Pearcy of his rights and conducted a short interview. Detective Lenox testified that when he spoke to Pearcy about the murder, Pearcy was calm and talkative. Pearcy told Detective Lenox that Lewis was homeless, but then lived with him for a short time and would buy a lot of beer for the two of them. Pearcy stated that Lewis became belligerent when he drank, that he did not like it when Lewis acted like that, and that one day he decided he was going to do something about it. He also admitted that he enjoyed TV shows about unsolved murders, such as "C.S.I." and "First Forty-Eight Hours," and wondered if he would

be able to get away with murder himself. Pearcy believed Lewis would be the perfect candidate because he was not well liked, no one would miss him, and he was planning to leave Hot Springs to move to Colorado anyway.

Pearcy explained that one day he was walking downtown, and he went to the National Park Gifts and Souvenir shop and purchased a knife. Subsequent to that purchase, on or about July 5, 2008, Lewis passed out in a chair in Pearcy's apartment. Pearcy stated that he approached Lewis with the knife, but put it down to undo Lewis's pants. Pearcy informed Detective Lenox that he was bisexual and thought it would be a good time to try to have sex with Lewis. However, Lewis awoke and refused his advances, and Pearcy stabbed Lewis anywhere from six to eight times in his neck. Pearcy told Detective Lenox that he removed Lewis's clothes and wrote "catch me if you can" on his left thigh.

Pearcy stated that he put Lewis's body in the back room for two days, then attempted to put it in a closet, but ultimately put it in the trash can and used a blanket and inflatable mattress to cover it up. When the odor became too strong, Pearcy attempted to get rid of the smell with household cleaning products before moving the trash can out of the house and down the street. Pearcy informed Detective Lenox that the knife he used to kill Lewis was in the front room of his apartment.

After Detective Lenox's interview with Pearcy concluded, Detective Sergeant Tim Smith discovered the trash can at the location described by Pearcy. It was closed, but Detective Smith could detect a faint smell of decomposition once he opened the lid. He also observed material that appeared to be an air mattress in the trash can. Detective Smith then contacted the crime scene unit and the coroner. The body was transported to the medical examiner's office inside the trash can.

Officer Paul Norris conducted a search of Pearcy's apartment. Several of Pearcy's belongings were recovered at the apartment, including a knife. Norris also observed possible bloodstains on pieces of clothing, sheets and towels, the carpet in the back bedroom, and the wall in the back room. The items were sent to the Arkansas State Crime Lab.

The medical examiner received Lewis's body in a gray city trash can with a blue air mattress and sheets also inside. Lewis's body was in an advanced state of decomposition, and it was the examiner's understanding that the body had been in the trash can for a period of weeks. When he pulled the body from the trash can, the examiner saw that the upper right extremities were wrapped with black electrical cord and a belt, which were tied to both the right and left thighs. The medical examiner discovered five fatal stab wounds—three stab wounds on the right side of the neck, involving the right carotid artery and jugular vein, and two stab wounds on the left side of the neck. In addition, the examiner found defensive wounds on Lewis's upper extremities, indicating that Lewis had attempted to defend himself.

On October 6, 2008, Pearcy was charged with premeditated capital murder, and a jury trial was conducted on December 9, 2009. Pearcy was convicted by the jury of premeditated capital murder and sentenced to life imprisonment without the possibility of parole. It is from this conviction and sentence that he now appeals.

Pearcy notes in his brief that he never disputed that Lewis died at his hands; rather, he maintains on appeal that he lacked the mens rea of premeditated intent to support the charge and conviction of

capital murder and that he was entitled to the affirmative defense of mental disease or defect. Pearcy contends that his affirmative defense of mental disease or defect should be considered by this court in relation to his ability to form intentions before acting, weighing consequences, and exercising reasoning. The State first argues that the issue is not preserved for appellate review because Pearcy did not move for a directed verdict on the basis of mental disease or defect. Alternatively, the State argues that the evidence supports the conviction.

Before considering the merits of Pearcy's claim, we must address the State's assertion that he failed to preserve the argument for appellate review. We have repeatedly held that a challenge to the sufficiency of the evidence requires the moving party to apprise the trial court of the specific basis on which the motion is made. *See Rounsaville v. State*, 372 Ark. 252, 273 S.W.3d 486 (2008). The reasoning underlying our holdings is that when specific grounds are stated and the absent proof is pinpointed, the circuit court can either grant the motion, or, if justice requires, allow the State to reopen its case and supply the missing proof. *See Marcyniuk v. State*, 2010 Ark. 257, 373 S.W.3d 243. Furthermore, we have held that, to preserve for appeal whether appellant is entitled to the insanity affirmative defense, an appellant must specifically move for directed verdict on the basis of mental disease or defect. *See id.; see also Tester v. State*, 342 Ark. 549, 30 S.W.3d 99 (2000); *Brown v. State*, 316 Ark. 724, 875 S.W.2d 828 (1994).

At the close of the State's case, Pearcy's counsel made the following motion for directed verdict:

Move for a directed verdict as far as insufficiency of the evidence to show premeditation. And I'm making that in light of the defense that's been offered.

According to Detective Lenox's testimony, Mr. Pearcy admitted to him, among other things, that Stacy Lewis was passed out in a chair, he approached him with a knife for the purpose of engaging in sexual behavior, began to— or took steps towards that by trying to undo his pants, at which time he awoke, and he then stabbed him. You could consider this as an attempted rape and the murder was an afterthought. Thereby there's no premeditation in that there was a weighing in the mind of the consequences of the actions, as required under the definition of premeditation and deliberation, and that this is in fact a murder first as opposed to a premeditated murder.

Granted, there are statements attributed to him after the fact that he wanted to kill somebody and see what it was like and see if he could get away with it, but there was no statement that he wanted to kill him [in] particular. Now there are some references that he had gotten tired of Mr. Lewis's behavior, but they weren't joined together.

At the close of Pearcy's defense, his counsel renewed his motion by stating, "I have to do it all over again, and it's gonna be a directed verdict on capital murder, insufficiency of them [the State] showing premeditation and deliberation prior to [the murder]."

▆ Pearcy's motions for directed verdict were made on the basis that there had been insufficient evidence of premeditation and intent. On appeal, however, he argues both that the State failed to prove premeditation and deliberation and that he should have been found not guilty by reason of mental disease or defect. Because Pearcy failed to move for directed verdict at the close of his defense on the basis of the

affirmative defense of mental disease or defect, that issue is not preserved for our review. *See Marcyniuk, supra.* Therefore, we decline to consider it as a point for reversal. Pearcy did properly move for directed verdict on the basis that the State failed to prove premeditation and deliberation and, therefore, we will discuss his argument that the circuit court failed to issue a directed verdict in his favor based on that claim.

■■■ As noted previously, Pearcy was charged with premeditated capital murder. A person commits capital murder if "[w]ith the premeditated and deliberated purpose of causing the death of another person, the person causes the death of any person." Ark.Code Ann. § 5–10–101(a)(4) (Repl. 2006). Premeditation and deliberation may be formed in an instant. |₇*See Winston v. State,* 372 Ark. 19, 269 S.W.3d 809 (2007). Intent can rarely be proven by direct evidence; however, a jury can infer premeditation and deliberation from circumstantial evidence, such as the type and character of the weapon used, the nature, extent, and location of wounds inflicted, and the conduct of the accused. *See Robinson v. State,* 363 Ark. 432, 214 S.W.3d 840 (2005).

■■■ During trial, the State presented evidence that Pearcy had grown weary of Lewis's behavior; that he was intrigued by the idea of killing someone, knowing what it felt like, and seeing if he could get away with it; that he believed Lewis would be a good victim because of his personality and his circumstances; that he purchased a knife; that he approached Lewis with the knife while Lewis was passed out; and that he stabbed Lewis five times when he awoke. The evidence supported a finding that Pearcy's attack on Lewis was brutal

and that Lewis fought for his life. The evidence showed that Pearcy attempted to cover up the crime by hiding Lewis's body in a room of his apartment and then in a trash can for several weeks before confessing the crime. As a whole, the evidence presented was sufficient to sustain a finding of premeditation and deliberation and a conviction for capital murder, and, therefore, we affirm the order of the circuit court.

Pearcy additionally argues that photographs marked as Exhibit 11 and Exhibit 45 [1] should not have been admitted into evidence because they are both irrelevant, cumulative, |₈and more prejudicial than probative. The State avers that the argument as to Exhibit 11 is not preserved because there was no objection made to the circuit court. Additionally, the State contends the argument as to Exhibit 45 is partially unpreserved because Pearcy did not object to Exhibit 45 as being either irrelevant or cumulative.

■■■ It is well settled that arguments not raised at trial will not be addressed for the first time on appeal. *See Ray v. State,* 2009 Ark. 521, 357 S.W.3d 872. Additionally, it is incumbent upon an appellant to be specific as to which photographs are objectionable and which are not. *See Blanchard v. State,* 2009 Ark. 335, 321 S.W.3d 250. An objection to a photograph must also be sufficiently specific to apprise the trial court of the particular error complained of; otherwise, the right to appellate review is not preserved. *See id.*

■■■ The record reveals that during the direct examination of Shawn Stillian, an officer with the Hot Springs Police Department, the State moved for introduction of Exhibit 11, a photograph of the decomposing body of the victim inside the trash

---

1. "Exhibit # 45" is discussed on the record as "Exhibit G"; the photograph at issue is

marked as both "Exhibit # 45" and "Exhibit G."

can. The court asked defense counsel if there was an objection and Pearcy's counsel responded, "[n]ot to number eleven, no, sir." Therefore, Pearcy's argument as to Exhibit 11 was clearly not preserved for our review.

■ The court later reviewed several other photographs at once to determine admissibility. When reviewing Exhibit 45, a photograph of the binding around the hands on the decomposing body, Pearcy's counsel stated that "Dr. Peretti could demonstrate from the witness stand how the bindings or ligatures were in place." That objection is certainly not a specific objection to relevance or the cumulative nature of the photograph. Therefore, those arguments are not preserved for our review. Arguably, the objection implied that defense counsel believed the photograph to be more prejudicial than probative. However, even assuming that objection to be preserved, we do not find that it was reversible error for the circuit court to admit Exhibit 45.

■ Generally, the decision of admitting photographs is left to the circuit court's sound discretion. See Riggs v. State, 339 Ark. 111, 3 S.W.3d 305 (1999). We will not reverse the circuit court's decision absent an abuse of that discretion. See id. Photographs are ordinarily admissible when they are helpful to explain testimony. See id. The fact that a photograph that is inflammatory or cumulative is not, standing alone, sufficient reason to exclude it. See Weger v. State, 315 Ark. 555, 869 S.W.2d 688 (1994). We have often held that a photograph is not inadmissible merely because it is cumulative and that the defendant cannot admit the facts portrayed to prevent the State from putting on its proof. See Berry v. State, 290 Ark. 223, 227, 718 S.W.2d 447, 450 (1986). Of course, if a photograph serves no valid purpose and can only result in inflaming

the passions of the jury, it is inadmissible. See Gruzen v. State, 267 Ark. 380, 591 S.W.2d 342 (1979). Even the most gruesome photographs have been held admissible to show the nature and location of wounds in order to rebut a defendant's claim of self-defense, see Perry v. State, 255 Ark. 378, 500 S.W.2d 387 (1973), or to show premeditation and deliberation, see Robinson v. State, 269 Ark. 90, 598 S.W.2d 421 (1980). Moreover, other acceptable purposes for admitting photographs include showing the condition of the victim's body, the probable type or location of the injuries, and the position in which the body was discovered. See Jones v. State, 340 Ark. 390, 10 S.W.3d 449 (2000).

■ Here, the circuit court took the time to go over several photographs one by one before admitting them into evidence and applied the appropriate balancing test. While the court first expressed a concern that Exhibit 45 did not "add" anything, the State then explained that this photograph helped illustrate Pearcy's purposeful behavior and also depicted the binding of the hands, which was the condition that the body was found in, and how many ligatures were used. Again, we find no error and affirm the circuit court.

In addition to the arguments raised by Pearcy, the record in this case has been reviewed for reversible error pursuant to Arkansas Supreme Court Rule 4–3(i) (2010), and none has been found.

Affirmed.