SLIP OPINION

Cite as 2017 Ark. 129

# SUPREME COURT OF ARKANSAS.

No. CR-16-547

| | |
|---|---|
| MATTHEW WAYNE NICHOLS<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered April 13, 2017<br><br>PRO SE MOTIONS FOR EXTENSION OF<br>TIME TO FILE BRIEF AND TO DUPLICATE APPELLANT'S BRIEF AT PUBLIC EXPENSE<br>[PULASKI COUNTY CIRCUIT COURT, NO. 60CR-13-2206]<br><br>HONORABLE WENDELL GRIFFEN, JUDGE<br><br>APPEAL DISMISSED; MOTIONS MOOT. |

## PER CURIAM

Appellant Matthew Wayne Nichols filed a pro se petition for postconviction relief pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure (2016), which was denied by the trial court. Nichols lodged this appeal, and he has filed two motions in which he seeks an extension of time to file his brief and to duplicate his appeal brief at public expense. An appeal from an order that denied a petition for postconviction relief will not be permitted to go forward where it is clear that the appellant could not prevail. *Crawford v. Cashion*, 2010 Ark. 124, at 2, 361 S.W.3d 268, 270 (per curiam). Because it is clear that Nichols cannot prevail on appeal, we dismiss the appeal, and Nichols's motions are moot.

A jury convicted Nichols of capital murder in the death of his girlfriend, Jessica McFadden, whom he had set on fire. The State waived the death penalty, and Nichols was

sentenced as a habitual offender to life without parole. This court affirmed. *Nichols v. State*, 2015 Ark. 274, 465 S.W.3d 846.

Nichols filed a timely petition for postconviction relief and made numerous allegations of ineffective assistance of counsel and an allegation of prosecutorial misconduct. The trial court denied relief without conducting an evidentiary hearing and concluded that the errors alleged by Nichols and attributed to both his trial counsel and appellate counsel were the result of strategic decisions, which did not constitute ineffective assistance of counsel. The court further found that Nichols's allegation of prosecutorial misconduct was not cognizable in a Rule 37.1 proceeding.

This court will not reverse the trial court's decision granting or denying postconviction relief unless it is clearly erroneous. *Walden v. State*, 2016 Ark. 306, at 2–3, 498 S.W.3d 725, 728–29 (per curiam); *Kemp v. State*, 347 Ark. 52, 55, 60 S.W.3d 404, 406 (2001). A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Walden*, 2016 Ark. 306, at 2–3, 498 S.W.3d at 728–29. When considering an appeal from a trial court's denial of a Rule 37.1 petition based on ineffective assistance of counsel, the sole question presented is whether, based on the totality of the evidence under the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), the trial court clearly erred in holding that counsel's performance was not ineffective. *Id.* Under the two-prong standard outlined in *Strickland*, to prevail on a claim of ineffective assistance of counsel, the petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced

SLIP OPINION

his defense. *Id.* The reviewing court must indulge in a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* The petitioner claiming ineffective assistance of counsel has the burden of overcoming this presumption by identifying specific acts or omissions of trial counsel, which, when viewed from counsel's perspective at the time of the trial, could not have been the result of reasonable professional judgment. *Id.* The second prong requires a petitioner to show that counsel's deficient performance so prejudiced his defense that he was deprived of a fair trial. *Id.* Consequently, the petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.*

Before addressing the allegations contained in Nichols's petition for postconviction relief, it is necessary to review the evidence adduced at his trial as summarized by this court in affirming his conviction. *Nichols*, 2015 Ark. 274, at 2–6, 465 S.W.3d at 847–49. Three eyewitnesses testified at Nichols's trial: Franklin Hinton, who had known both McFadden and Nichols for several years; Terry Yancy, Nichols's niece and the best friend of McFadden; and Angela Yielding, a neighbor who lived two houses away from McFadden's residence. Hinton testified that he was with Nichols on the day of the murder helping him repair a vehicle when McFadden returned to her residence where she and Nichols became embroiled in an angry confrontation. According to Hinton, Nichols had been drinking but

was not intoxicated. Nichols told Hinton to wait for him while he went into the house to talk to McFadden. As a result of the ongoing argument between Nichols and McFadden, Hinton decided to leave, but as he walked back to his vehicle, he heard McFadden screaming, and he returned to the house. When he discovered that the screen door was locked, Hinton looked into a window to see what was going on inside the residence, and he saw Nichols dumping gasoline onto McFadden, when "all of a sudden, the whole living room lit up." Hinton yelled at Nichols, but got no response, and Hinton watched while Nichols continued to pour gasoline onto McFadden. When McFadden fell against the window where Hinton had been watching, he recoiled in horror and fell off the porch. He ran from the scene, went straight home, and did not call the police until the next day.

Terry Yancy testified that a few weeks before the incident, Nichols told her that he would "burn her up in that house" if McFadden "put him out." Yancey also recounted a phone call that she received from McFadden on the date of the incident, asking her to bring her some locks because she intended to change the locks at her residence. During that call, Yancey heard Nichols's voice in the background repeating the threat that if McFadden put him out, "he would burn her up in that motherf- - -ing house." Yancey testified that she perceived that Nichols had taken the phone from McFadden, and she sped through town trying to reach McFadden's house. When she arrived, Yancey saw crime-scene tape, blood on the sidewalk and burn marks that led up to the house. Yancey subsequently went to the hospital to see McFadden and recalled that McFadden's skin was melted, that she had only spots of hair and skin remaining, and that she was on a machine that was keeping her alive.

Yielding testified that she was asked by another neighbor to call an ambulance because McFadden's house was on fire. After calling the fire department, Yielding walked toward McFadden's house and testified that she saw Nichols pouring gasoline "on top of some figure," which Yielding described as lying on the ground in the fetal position. Yielding saw Nichols walking away from the crime scene, and she identified Nichols to police as the perpetrator of the crime. Investigating officers testified that when they encountered Nichols at the scene, he smelled of gasoline and that Nichols's nostrils appeared to be blistered and pealing. A state medical examiner testified that McFadden had sustained burns on ninety percent of her body.

Nichols testified in his own defense and claimed that he had consumed half a pint of gin on the day of the incident. He stated that when he saw McFadden come home from what was supposed to have been an appointment in drug court, he became upset because she was dressed inappropriately. An argument ensued, fueled by his accusations of her infidelity and her threats to call the police to take him to jail. He admitted that they fought over her phone and that he snatched the phone away from her. According to Nichols, he saw the gas can in his truck, picked it up, and went back into the house. McFadden saw that he was carrying a gas can, but the first words out of her mouth were, "Where's my goddamn phone at." Nichols admitted that he "tripped" McFadden and doused her with gasoline. He then struck his lighter, and "the flame went up." Nichols claimed that he did not plan to burn McFadden before he became upset. However, as McFadden was attempting to put out the fire, he poured more gasoline on her. Nichols stated that he saw McFadden come out of the front of the house, cross the front of the yard, and lie down in

the driveway. Nichols stated that he did not intend to kill McFadden, he just wanted to "hurt her real bad." He explained that he poured additional gas on McFadden because initially he "hadn't hurt her in a way to make her unattractive, you know, for sexual purposes." Nichols admitted that he did not hesitate to pour more gas on McFadden because he realized he was "still going to go to jail" after the first dousing.

In his petition for postconviction relief, Nichols first contended that trial counsel erroneously failed to investigate the victim's medical records reflecting that her family, together with physicians at the University of Arkansas for Medical Sciences (UAMS), had made the decision to withdraw medical care and allow McFadden to die. Nichols maintained that the medical records would have exonerated him of McFadden's murder. Nichols also asserted that counsel ineffectively failed to present the testimony of treating physicians from UAMS to describe McFadden's medical condition prior to the withdrawal of further medical care and to allegedly testify that the victim would have survived had proper medical care been rendered. These allegations do not support an ineffective-assistance-of-counsel claim.

It is well settled that one whose wrongdoing is a concurrent proximate cause of an injury is criminally liable the same as if his or her wrongdoing were the sole proximate cause of the harm done. *Jefferson v. State*, 372 Ark. 307, 312, 276 S.W.3d 214, 219 (2008). In other words, Nichols is criminally liable for all the consequences that arose from his intentional actions, including the decision made by family and physicians to allow McFadden to die due to the nature and extent of the injuries that he had inflicted, which resulted in burns over ninety percent of her body. McFadden's medical records reflecting

that a decision was made to withdraw further treatment would have been wholly irrelevant to a determination of Nichols's guilt. Furthermore, there is no substantiation for Nichols's bald assertion that the UAMS physicians would have testified that McFadden would have ultimately survived her injuries. Regardless, testimony from treating physicians would have emphasized the severity of the burn injuries inflicted by Nichols. Based on the above, any decision by trial counsel not to present evidence disclosing McFadden's medical care was clearly the product of reasonable professional judgment.

Next, Nichols contended that trial counsel failed to properly investigate previous statements provided by Hinton, Yielding, and Officer Ellenbaas, who was a first responder to the crime scene, and uncover alleged inconsistencies in their trial testimony. According to Nichols, such investigation would have given rise to more effective cross-examination of these witnesses, demonstrating that their versions of the events surrounding the crime were inaccurate and contradictory. However, Nichols did not describe the inconsistencies that he alleged that trial counsel had unreasonably failed to investigate and bring to light.

Conclusory allegations unsupported by facts are insufficient to warrant Rule 37.1 relief. *Rea v. State*, 2016 Ark. 368, at 11, 501 S.W.3d 357, 364–65 (per curiam). The burden is entirely on a petitioner to affirmatively support an ineffective-assistance-of-counsel claim with factual substantiation sufficient to overcome the presumption that counsel was effective and to demonstrate that he was prejudiced by counsel's poor representation. *Id.* Nichols provided no substantiation to support his conclusory allegations that trial counsel erroneously failed to conduct an adequate investigation and effectively cross-examine the State's witnesses.

In any event, Nichols's own testimony confirmed the relevant portions of the two eyewitness accounts: that Nichols doused McFadden with gasoline, set her on fire, and continued to pour gasoline on the flames. Nichols did not explain how trial counsel's alleged failure to conduct a more aggressive cross-examination of the State's witnesses, based on unspecified inconsistencies in their testimony, was deficient such that the outcome of the trial was skewed.

In addition, we recognize that the cross-examination of witnesses is a largely subjective issue about which seasoned advocates could disagree. *Walden*, 2016 Ark. 306, at 9, 498 S.W.3d at 732; *McNichols v. State*, 2014 Ark. 462, at 8, 448 S.W.3d 200, 206 (per curiam). An approach in examining a witness that may prove effective in one instance may fail entirely in another, and counsel is allowed great leeway in making strategic and tactical decisions concerning which questions to ask. *Walden*, 2016 Ark. 306, at 9, 498 S.W.3d at 732. Nichols's conclusory allegations are insufficient to overcome the presumption that trial counsel's cross-examination of the State's witnesses was the result of reasonable professional judgment. *Rea*, 2016 Ark. 368, at 11, 357 S.W.3d at 364-65.

Nichols further contended that trial counsel was deficient for failing to object to alleged inflammatory statements made by the prosecutor during closing argument or to ask for either a mistrial or an admonishment to the jury. Specifically, Nichols maintained that the prosecutor had inflamed the passions of the jury by characterizing Nichols's tearful testimony as an attempt to con or trick the jury into believing that Nichols's conduct was justified and understandable under the circumstances. According to Nichols, these remarks convinced the jury that he was guilty of capital murder rather than the lesser-included

SLIP OPINION

offense of second-degree murder. Again, Nichols failed to provide sufficient facts to establish that trial counsel's failure to object during closing argument fell outside the wide range of reasonable professional assistance. *Walden*, 2016 Ark. 306, at 2–3, 498 S.W.3d at 728–29.

We have repeatedly stated the general rule that closing arguments must be confined to questions in issue, the evidence introduced during trial, and all reasonable inferences and deductions which can be drawn therefrom. *Woodruff v. State*, 313 Ark. 585, 592, 856 S.W.2d 299, 303–04 (1993). When an attorney's comment during closing arguments directly reflects, or is inferable from, testimony at trial, there is no error. *Id*. Nichols attached to his petition for postconviction relief the transcript of the prosecutor's closing argument. A review of that partial transcript demonstrates that the prosecutor's remarks were based on evidence adduced at trial and the reasonable inferences that could be drawn from that evidence. Thus, there is no showing that an objection to the prosecutor's comments would have been fruitful. Furthermore, this court has noted that experienced advocates might differ about when, or if, objections during closing argument are called for since, as a matter of trial strategy, further objections from counsel may have succeeded in making the prosecutor's comments seem more significant to the jury. *Polivka v. State*, 2010 Ark. 152, at 16–17, 362 S.W.3d 918, 929. Because many lawyers refrain from objecting during closing argument, absent egregious misstatements, the failure to object during closing argument is within the wide range of permissible professional legal conduct. *Id*. Nichols also made a claim of prosecutorial misconduct based on the above-cited remarks. A claim of prosecutorial misconduct is not cognizable in a Rule 37 proceeding because it is a claim

SLIP OPINION

that could have been raised at trial and on direct appeal. *Airsman v. State*, 2015 Ark. 409, at 6, 473 S.W.3d 549, 555 (per curiam).

Nichols additionally asserted that trial counsel failed to enlist a handwriting expert to prove that he did not sign a consent-to-search form and that the consent form had been signed by a detective. While Nichols contended that a handwriting expert would have rendered inadmissible certain physical evidence introduced at trial, he did not identify that evidence, nor does he establish that the evidence was gathered in connection with his consent to a search. Again, the burden is entirely on a petitioner to affirmatively support an ineffective-assistance-of-counsel claim with factual substantiation sufficient to overcome the presumption that counsel was effective and to demonstrate that he was prejudiced by counsel's poor representation. *Rea*, 2016 Ark. 368, at 11, 501 S.W.3d at 364–65. Nichols did not provide substantiation for his allegation that trial counsel's failure to gain the suppression of unspecified evidence was either deficient or had prejudiced him. When considering a claim based on ineffective assistance of counsel, the totality of the evidence must be considered under the standard set forth in *Strickland*. *Walden*, 2016 Ark. 306, at 2–3, 498 S.W.3d at 728–29. Again, taking into consideration Nichols's own testimony and the testimony of the eyewitnesses to the crime, there is no demonstration that suppression of physical evidence collected from the crime scene would have changed the outcome of the trial.

Nichols further contended that trial counsel had ineffectively failed to conduct pretrial investigation and to obtain the phone records of Yancey, which he alleged would have proved that McFadden and Yancey had never spoken by phone on the day of the

crime. Nichols asserted that Yancey's testimony that Nichols threatened to burn McFadden provided the only evidence of premeditation and deliberation.

First, Nichols presented nothing other than his bare assertion that phone records would have discredited Yancey's testimony. Second, assuming that Yancey's phone records would have provided proof that she had not spoken with McFadden on the day of the crime, a review of the evidence adduced at trial shows that Yancey's testimony was not, as alleged by Nichols, the sole basis for a finding of premeditation. It is well settled that premeditation and deliberation may be formed in an instant. *Pearcy v. State*, 2010 Ark. 454, at 6–7, 375 S.W.3d 622, 626. We have also explained that a jury can infer premeditation and deliberation from circumstantial evidence, such as the type and character of the weapon used, the nature, extent, and location of trauma inflicted, and the conduct of the accused. *Id.* Nichols claimed that he never intended to cause McFadden's death. However, a person is presumed to intend the natural and probable consequences of his actions. *Wyles v. State*, 368 Ark. 646, 651, 249 S.W.3d 782, 786 (2007). Nichols's own admissions that he retrieved a gas can from his truck, which he brought inside the home, tripped McFadden so that he could douse her with gasoline and set her on fire, and continued to feed the flames that had engulfed her provided sufficient circumstantial proof of Nichols's premeditated and deliberate intent. In view of the totality of the evidence, there is no demonstration that trial counsel's failure to allegedly discredit Yancey's testimony by examining her phone records prejudiced the outcome of the trial. For the same reasons, Nichols's contention that his appellate counsel had ineffectively failed to challenge on appeal the sufficiency of the evidence that supported his conviction for premeditated capital murder is likewise

untenable. Again, there was sufficient circumstantial evidence to demonstrate that McFadden's murder was premeditated. The failure to make a meritless argument on appeal does not constitute ineffective assistance of counsel. *Wooten v. State*, 2016 Ark. 376, at 6–7, 502 S.W.3d 503 (per curiam). The trial court did not clearly err when it concluded that the conduct of both trial and appellate counsel alleged to be deficient and prejudicial by Nichols was, instead, the result of reasonable strategic decisions and did not constitute ineffective assistance of counsel.

Appeal dismissed; motions moot.