Cite as 2021 Ark. 70

# SUPREME COURT OF ARKANSAS
No. CR–20–597

| | | |
|---|---|---|
| | | **Opinion Delivered:** April 8, 2021 |
| EMMITT RILEY | APPELLANT | APPEAL FROM THE DREW COUNTY CIRCUIT COURT [NO. 22CR-18-30] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE SAM POPE, JUDGE |
| | APPELLEE | <u>AFFIRMED</u>. |

**BARBARA W. WEBB, Justice**

Emmitt Riley appeals from an order of the Drew County Circuit Court denying his petition for postconviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. For reversal, Riley argues that the circuit court erred by denying his Rule 37 petition without a hearing because his trial counsel failed to request a jury instruction on the lesser-included offense of second-degree murder. He asserts that he was prejudiced by his trial counsel's decision and that he was entitled to a hearing to demonstrate that prejudice. We affirm.

## I. *Relevant Facts*

Riley was charged with first-degree murder. The evidence at trial established that Riley and Josh Martin had a verbal altercation that escalated into a physical fight. The fight continued for an extended period, stopped, and resumed. Both parties were alleged to have displayed knives. During the course of the fight, Martin broke Riley's ankle. After the parties separated a second time, Riley drew a pistol and shot Martin, killing him. Riley

asserted that he shot in self-defense.

There was additional testimony from eye-witnesses. When the fight was broken up the final time, Martin's friend Anthony Thomas pulled Martin away from Riley. At that point, Riley told Martin either "I got something for you" or "I know what to do for a n★★★★r like you," and he shot Martin. Based on witness statements and blood evidence, the police determined that Riley was at least nine feet away from Martin when he shot him.

After he shot Martin, Riley left the scene. He called 911, reported the shooting, and requested that police pick him up at his residence. Riley testified in his own defense. He stated that it was not his intent to kill Martin, only to stop him from assaulting him further. He pointed out that he had only fired once, though he allegedly had additional rounds of ammo. He left the scene immediately and no took no further action toward Martin, though Martin was still alive and would live for some time before he died at the hospital. Riley told police that he disposed of the murder weapon by throwing it into a creek. While police searched the creek for the gun, Riley informed them that it was actually hidden in a grill at his home. Police soon recovered the gun from the grill.

When it came time to select jury instructions, Riley's trial counsel sought, and the trial court agreed to give, jury instructions on the lesser-included offenses of manslaughter and negligent homicide. Riley's trial counsel initially anticipated the circuit court giving an instruction on second-degree murder but then accepted the prosecutor's suggestion that it was not applicable to the facts. Riley's trial counsel did not proffer a second-degree-murder instruction.

MR. GIBSON:          Where's your second degree murder? Have I approved the second degree murder?

| | |
|---|---|
| THE COURT: | He didn't give one on second degree. |
| MR. SPAIN: | I didn't give one on second degree. |
| MR. GIBSON: | Oh. Oh. Oh. |
| MR. SPAIN: | I don't think our client -- |
| MR. GIBSON: | Oh. I've got one. That threw me off. |
| MR. SPAIN: | I didn't do second degree because I didn't think it applied because either he purposely caused his death or he, in my opinion, he either recklessly formed a self-defense intent and used more force that was necessary which makes it then – |
| THE COURT: | Manslaughter. |
| MR. SPAIN: | Manslaughter. |
| MR. GIBSON: | I |
| THE COURT: | You go along with that? |
| MR. GIBSON: | I'll go along with that. |

Riley was convicted of murder in the first degree and sentenced to life in prison.

Riley timely filed a Rule 37 petition in which he alleged that his trial counsel was ineffective for failing to seek an instruction on second-degree murder. In denying Riley's petition, the circuit court cited the above-quoted discussion in the trial record in which the prosecutor opined that second-degree murder did not fit the facts of the case, and Riley's trial counsel agreed. The circuit court found this proved that the decision not to seek a second-degree-murder instruction was trial strategy. The circuit court further found that in his Rule 37 petition, Riley made only a "conclusory" argument concerning his trial

3

counsel's failure to seek an instruction on second-degree murder, and "[Riley] did not show that the jury could have considered murder in the second degree."

Riley timely filed a notice of appeal.

## II. *Standard of Review*

When this court reviews the denial of relief pursuant to Rule 37, we will not reverse the circuit court's decision granting or denying postconviction relief unless it is clearly erroneous. Wood *v. State*, 2015 Ark. 477, 478 S.W.3d 194. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.*

Our standard of review requires that we assess the effectiveness of counsel under the two-prong standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Montgomery v. State*, 2011 Ark. 462, 385 S.W.3d 189. The first prong under the *Strickland* test relates to trial counsel's performance. *Id.* A petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Id.* Counsel's performance must be shown to have fallen below an objective standard of reasonableness. *Id.* In order to meet the second prong of the test, the petitioner must show that counsel's deficient performance prejudiced petitioner's defense to such an extent that he was deprived of a fair trial. *Id.* A claimant must show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* Unless a petitioner makes both showings, it cannot be said that the conviction

4

resulted from a breakdown in the adversarial process that renders the result unreliable. *Nichols v. State*, 2017 Ark. 129, at 3, 517 S.W.3d at 407–08.

Additionally, when a Rule 37 petition is denied without a hearing pursuant to Rule 37.3(a), we review the circuit court's written findings setting forth that the petition is wholly without merit or that it is conclusive on the face of the record that the petitioner is entitled to no relief for clear error. *Wood, supra.* However, in determining a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *Montgomery, supra.* Regardless of the adequacy of the circuit court's order, this court may affirm the denial of a Rule 37 petition if it "can determine from the record that the petition was wholly without merit. *Id.*

### III. *Argument and Analysis*

Riley's single point on appeal has two subpoints: (1) the circuit court erred in summarily denying Riley's Rule 37 petition without a hearing and (2) the circuit court erred by failing to find that counsel's decision to not request an instruction on second-degree murder constituted ineffective assistance of counsel. We will consider each in turn.

Riley acknowledges that under Rule 37.3 of the Arkansas Rules of Criminal Procedure, a circuit court may summarily dispose of a Rule 37 petition. He notes that the rule states: "(a) If the petition and the files and records of the case conclusively show that the petitioner is entitled to no relief, the trial court shall make written findings to that effect, specifying any parts of the files, or records that are relied upon to sustain the court's findings." Ark. R. Crim. P. 37.3. However, Riley argues that the circuit court's findings were inadequate and not supported by the record. He asserts that when the circuit court

began the conference on jury instructions, all the evidence was in, and it is clear that his trial counsel intended to pursue a second-degree-murder instruction. Riley contends that not only did his trial counsel ask for the prosecutor's instruction but also that he had prepared his own. According to Riley, the record shows that his defense counsel did not make any tactical decision to abandon this lesser-included offense, he merely agreed to go along with the prosecutor when the prosecutor argued that the evidence only supports purposeful murder or manslaughter. Riley argues that his defense counsel's decision to go along with the prosecutor and remove this option from the jury's consideration was not a beneficial tactical decision.

Riley also challenges the circuit court's finding that he was not prejudiced by his trial counsel's failure to seek a second-degree-murder instruction. Citing *Rainey v. State*, 310 Ark. 419, 837 S.W.2d 453 (1992), and *Robinson v. State*, 269 Ark. 90, 598 S.W.2d 421 (1980), Riley asserts that he was entitled to a jury instruction on second-degree murder. He contends that the circuit court's finding that he was not prejudiced was erroneously based on the fact that the jury ultimately convicted him of first-degree murder. Riley asserts that this finding is contrary to Arkansas Supreme Court jurisprudence and is an attempt to apply the "skip rule," which he contends is inapplicable. He asserts that when his trial counsel agreed to leave out a second-degree-murder jury instruction, he left the jury with the option of either finding Riley guilty of purposeful murder or skipping all the way down to manslaughter—a "momentous" error. Riley posits that if the jury was unwilling to find manslaughter, the only crime Riley could be found guilty of was a Class Y felony instead of a Class A felony, which exposed him to a term of thirty years with the

6

possibility of parole. We are not persuaded by this argument.

The circuit court's findings adequately identified the error that Riley complains of as trial strategy. On the whole record before us, it is clear that the defense strategy was always to make the jury find self-defense or imperfect self-defense. The opening statement by Riley's trial counsel is instructive:

> However , in this case , the Defendant has alleged that he acted in self-defense. We have a right in Arkansas, as in most states in the union, if not all of them, that a person can resort to deadly physical force. It doesn't say it can't be a firearm if that's all he's got. If there's a knife involved, you know, sometimes if the other guy has got a knife, you have to have something that will protect you from the knife. But you can use deadly physical force if it's reasonably necessary to resort to that and not be able to retreat with complete safety; not just safety, but complete safety. And you will be instructed on that after we finish all the evidence in the case. And if from that evidence of self-defense it raises a reasonable doubt in your minds, then you are sworn to follow the law and find him not guilty.

> This case has a lot of peculiar circumstances in it. And one of the most peculiar is, I guess, the Defendant, Emmitt Riley, was one of the first people to call in about the shooting. He wanted them to come pick him up. They asked him if he will come to the police station. No. I want you to come pick me up, take me in.

> . . . .

> Emmitt's sixty years old now. He was going on sixty. He was fifty-nine. Josh was twenty-six, I believe, less than half his age. And under the facts of this case, if Emmitt had not had a pistol – wasn't legal to carry one, but he's still justified to use it if he has to -- if he hadn't had a pistol, we would be in here prosecuting Josh Martin.

> It was one of them. It was fight or die. And Emmitt was not in any shape to protect himself from serious physical injury. He suffered serious physical injury. So they took him to the jail. They took pictures of him. He has a big [welt] on the side of his face. That was the first punch thrown by Josh who provoked this fight over something that had been going on between them because of their ladies in their family had had a problem years ago and Josh had never let it go.

. . . .

The law is that if you can –– And I think the Judge is going to instruct you on it. You decide if I'm telling you the truth. The law is that if someone is committing a, thinks that a felony is being committed upon them or about to be committed upon them with force and violence, they can resort to deadly physical force. But it has to be only that much that is reasonable. And if it's necessary to save your life, our law permits it if you can't retreat with complete safety. And you have to understand that these decisions have to be made in milliseconds, that quick. You can't sit around and think about it for half a day about whether I ought to be able to pull this gun or not.

This is a natural instinct that God gave us to exercise when we have to. You listen to the evidence , decide where there's a reasonable doubt in this case on whether or not this was just out and out murder or even a lesser included. You will be instructed on lesser included charges. If you find him not guilty of murder one, then you consider murder two. You will be instructed on what that consists of. And if you find reasonable doubt on that, you think about, you consider manslaughter, whether or not it would have been murder except he was exercising, he was operating under the influence of extreme emotional disturbance or whether or not he acted negligently and should not have shot anybody. He should have realized he could escape. That's negligent homicide. And if you find that he had a complete right of self-defense, it's not guilty. That's what the law is. And so I want you to be thinking about those, if you don't mind, while you're listening to this testimony. See if there is any evidence to support a reasonable doubt

It is obvious that while Riley's trial counsel acknowledged in his opening statement the likelihood that a second-degree-murder instruction would be given, his trial strategy was to have the jury find a disposition with much less criminal responsibility. Under the facts of this case, we hold that the circuit court did not clearly err in finding that trial counsel's decision to not insist that the circuit court give a second-degree-murder instruction was a matter of trial strategy. *Montgomery*, *supra.* There is a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance. *Nichols*, 2017 Ark. 129, at 3, 517 S.W.3d at 407. Counsel is allowed great leeway in making

strategic and tactical decisions, and those decisions are a matter of professional judgment. *Id*.

Riley's argument that the evidence supported a second-degree murder instruction is likewise unavailing. That point of law is not relevant in the matter before us; Rule 37 does not provide a forum to debate trial tactics or strategy, even if the strategy proves improvident. *Rankin v. State*, 365 Ark. 255, 227 S.W.3d 924 (2006). Accordingly, Riley's reliance on *Rainey* and *Robinson*, both direct appeals, is misplaced. Finally, we reject Riley's contention that prejudice is proven in this case by the fact that he was convicted of first-degree murder. Matters of trial strategy and tactics, even if arguably improvident, are not grounds for a finding of ineffective assistance of counsel. *Woods v. State*, 2019 Ark. 62, 567 S.W.3d 494. Accordingly, Thus, the circuit court did not clearly err in summarily denying Riley's Rule 37 petition.

Affirmed.

BAKER, HUDSON, and WYNNE, JJ., dissent.

**ROBIN F. WYNNE, Justice, dissenting.** I would reverse and remand for an evidentiary hearing on Riley's petition for postconviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. Therefore, I respectfully dissent.

Under Rule 37.3, an evidentiary hearing should be held in a postconviction proceeding unless the files and record of the case conclusively show that the petitioner is entitled to no relief. *See Henington v. State*, 2012 Ark. 181, at 5, 403 S.W.3d 55, 59 (citing *Sanders v. State*, 352 Ark. 16, 98 S.W.3d 35 (2003)). Here, the circuit court entered an order denying the Rule 37 petition without a hearing, finding in pertinent part as follows:

5. In the trial record the prosecutor set forth the reason why a second degree

murder instruction was not included and it is as follows:

> I didn't do second degree because I didn't think it applied because either he purposely caused his death or he, in my opinion, he either recklessly formed a self-defense intent and used more force than was necessary which makes it then . . . manslaughter. (T. 277)

The defense counsel concurred with this analysis. Trial tactics and strategy are not grounds for postconviction relief even if the tactics or strategy is unwise. Howard v. State, 367 Ark. 18, 238 S.W.3d 24 (2006). Here, the defense counsel's justification of self defense or alternatively imperfect self defense was the strategy that the defense made. Therefore, the petitioner has not made a showing of an error so serious that deprived him "counsel" guaranteed by the Constitution.

6. Additionally, there is no prejudice because the jury found Riley guilty of murder in the first degree under a purposeful conduct theory. Riley merely made a conclusory argument that he could have been guilty of murder in the second degree. He did not show that the jury could have considered murder in the second degree. For the aforementioned reasons, the petition for review under rule 37 proceeding is denied.

As set out in the majority opinion, we assess the effectiveness of counsel under the familiar two-prong standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Here, the circuit court's findings regarding the prejudice prong of the *Strickland* standard are clearly erroneous. A person commits murder in the second degree if the person knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-10-103(a)(1) (Repl. 2013). This court has held that second-degree murder under section 5-10-103(a)(1) is a lesser-included offense of first-degree murder under section 5-10-102(a)(2) (Supp. 2019) (purposely causing a death). *McCoy v. State*, 347 Ark. 913, 924, 69 S.W.3d 430, 437 (2002). The refusal to give an instruction on a lesser-included offense is reversible error if the

instruction is supported by even the slightest evidence. *Armstrong v. State*, 2020 Ark. 309, at 9, 607 S.W.3d 491, 498. Here, Riley argues that there was evidence to support giving a second-degree-murder instruction, pointing to his testimony that he did not intend to kill Martin, only to stop further assault; the fact that he shot only once despite having additional ammunition; and the fact that he left the scene immediately with Martin still alive. In light of this evidence, Riley argues that he was entitled to an instruction that he had knowingly caused Martin's death in addition to the State's requested instruction that he purposely caused Martin's death. I agree that Riley was entitled to such an instruction, and the majority fails to recognize that the evidence in this case could have supported an instruction for second-degree murder.

The circuit court found that there was no prejudice "because the jury found Riley guilty of murder in the first degree under a purposeful conduct theory." This implies that the court was applying the "skip rule," which provides that when an instruction on a lesser-included offense has been given, and the jury convicts of the greater offense, error resulting from the failure to give an instruction on another still lesser-included offense is cured. *Boyle v. State*, 363 Ark. 356, 364, 214 S.W.3d 250, 254 (2005). In other words, when the jury convicts of a greater offense and "skips" a lesser-included offense, there can be no error in failing to instruct on other even lesser-included offenses. *Rainey v. State*, 310 Ark. 419, 425, 837 S.W.2d 453, 456 (1992). This type of harmless-error analysis is not applicable here, where the jury was instructed on first-degree murder, extreme-emotional-disturbance manslaughter, reckless manslaughter, and negligent homicide. The fact that the jury convicted Riley of first-degree murder and rejected his self-defense or imperfect self-defense

11

theory does not mean that the jury could not have settled on a middle ground—second-degree murder. Based on this record, I believe the circuit court clearly erred in finding that Riley was not prejudiced; I am convinced that his defense was prejudiced to such an extent that he was deprived of a fair trial under the standards set forth in *Strickland*.

I would reverse and remand for an evidentiary hearing regarding trial counsel's performance. A hearing is necessary because the record does not conclusively show that Riley is not entitled to relief. The circuit court cited "trial tactics and strategy" and concluded that the defense made a strategic decision to pursue a self-defense or imperfect self-defense theory. But that strategy is not inconsistent with requesting a second-degree-murder instruction. And without an evidentiary hearing, there is no indication in the record of the defense's strategy—if any—in acquiescing to the prosecutor's flawed reasoning regarding the instruction. Further, the relevant question is not whether counsel's choices were strategic, but whether they were reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) (citing *Strickland* for the proposition that a defendant must show that counsel's representation fell below an objective standard of reasonableness). A hearing is necessary to determine whether counsel's performance fell below an objective standard of reasonableness.

BAKER and HUDSON, JJ., join.

*Jason Files*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.